1    BUCHALTER NEMER
    A Professional Corporation
2    JAMES B. WRIGHT (SBN: 63241)
    RICHARD C. DARWIN (SBN: 161245)
3    333 Market Street, 25th Floor
    San Francisco, CA 94105-2126
4    Telephone: (415) 227-0900
    Facsimile: (415) 227-0770
5    *jwright@buchalter.com*

6    Attorneys for Petitioner
    BANK OF AMERICA, N.A.

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11    BANK OF AMERICA, N.A., a national          CASE NO.
    banking association,
12                                               **BANK OF AMERICA'S PETITION**
                    Petitioner,                  **TO COMPEL CONTRACTUAL**
13                                               **ARBITRATION**
            vs.
14
    MICHELETTI FAMILY PARTNERSHIP, a
15    California Limited Partnership, ARTHUR
    MICHELETTI, an individual, and JANICE
16    MICHELETTI, an individual,

17                    Respondents.

18

19
                    **INTRODUCTORY ALLEGATIONS**
20
        1.      Petitioner, Bank of America, N.A. (the "Bank") is a national banking association
21
    with its headquarters in Charlotte, North Carolina.
22
        2.      Respondent Arthur Micheletti is a resident of San Mateo County, California, and
23
    was a beneficiary of the trust created by Arturo Micheletti by substituted declaration of trust dated
24
    March 13, 1931 (the "Trust").
25
        3.      Respondent Janice Micheletti is a resident of San Mateo County, California.
26
        4.      Arthur Micheletti and Janice Micheletti (collectively, the "Michelettis"), are the
27
    general partners of the Micheletti Family Partnership (the "Partnership"), a California limited
28

BN 2002013v3                                    1

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

1   partnership.  Upon information and belief, the Bank alleges that the Partnership is organized

2   under and pursuant to the laws of the State of California, with its principal place of business in

3   San Mateo County, California.

4        5.     On or about July 18, 1977, Bank of America N.T. & S.A., as the tenant, entered

5   into a lease agreement with the Trust, as landlord, for premises located in San Mateo, California

6   (the "Lease Agreement").  A true and correct copy of the Lease Agreement, and amendments

7   thereto, is attached hereto as Exhibit A.

8        6.     The Bank is the successor in interest to Bank of America N.T. & S.A.  The

9   Partnership is the successor in interest to the Trust.

10  **JURISDICTION AND VENUE**

11       7.     This Petition involves a dispute between citizens of different states, as the Bank is

12  a national banking association with its principal place of business in Charlotte, North Carolina,

13  the Respondents are either organized in, or citizens of, the State of California, and the amount in

14  controversy exceeds $75,000, exclusive of interest and costs.  Diversity jurisdiction is therefore

15  proper under 28 U.S.C. Section 1332.

16       8.     Venue is proper in this district because the Lease Agreement which is the subject

17  of this lawsuit was entered into, and was to be performed, in San Mateo County, California.

18  **INTRADISTRICT ASSIGNMENT**

19       9.     Pursuant to Local Rule 3-2(d), this Petition should be assigned to the San

20  Francisco or Oakland Division, as a substantial part of the events giving rise to the claims

21  addressed in this Petition occurred in San Mateo County, California.

22  **OPERATIVE ALLEGATIONS**

23       10.     The premises that are the subject of the Lease Agreement are located at 251, 253

24  255 and 257 South B Street, and 240 and 250 Main Street, in San Mateo, California (the

25  "Premises").

26       11.     Disputes have arisen between the Bank, on the one hand, and the Partnership and

27  Micheletti on the other, regarding the Lease Agreement.  Specifically, the Lease Agreement

28  provides:  (i) that the tenant may construct new improvements and interior alterations and

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

PETITION TO COMPEL CONTRACTUAL ARBITRATION

1  remodeling that the tenant deems necessary to the conduct of its business, and (ii) that upon the

2  expiration of the lease term, the tenant shall construct a demising wall on the Premises "to

3  separate any improvements constructed at Tenant's expense, on the said premises from any

4  improvements constructed and alterations made and performed on the adjacent Tenant-owned

5  property." Lease Agreement, Article 33.

6      12.    Notwithstanding the clear language of the Lease Agreement, and the Bank's

7  express willingness to meet its obligations under the Lease terms, the Partnership has demanded,

8  and continues to demand that, in addition to the construction of the demising wall, the Bank

9  remodel the Premises and return them to the exact condition they were in at the time the Lease

10 Agreement was signed in July of 1977. In addition, the Partnership is demanding that the Bank

11 perform other repairs at the Premises and asserting damage claims well in excess of $1 million.

12     13.    Arthur Micheletti, as the beneficiary of the Trust, has further alleged and claimed

13 that the Lease Agreement is invalid and should be revoked because the Bank's predecessor-in-

14 interest allegedly breached its fiduciary duties as the trustee of the Trust by signing the Lease

15 Agreement both as trustee/landlord and as tenant.

16     14.    The Lease Agreement contains a broad arbitration clause which requires the

17 arbitration of any and all disputes relating to the Lease Agreement. Specifically, pursuant to

18 Article 20 of the Lease Agreement, "any question, dispute, controversy or misunderstanding

19 arising under any provision of this lease shall be settled by arbitration. The party asking for

20 arbitration shall request arbitration through the American Arbitration Association and the decision

21 of that association shall be binding unto the parties hereto."

22     15.    The disputes alleged herein affect interstate commerce, as they are between

23 citizens of different states.

24     16.    Pursuant to the express agreement of the parties to this Action or their

25 predecessors in interest which binds them, the only proper forum for the resolution of the claims

26 asserted by the Partnership and Micheletti, including but not limited to the questions of whether

27 those claims are barred by the statute of limitations, laches, estoppel, or any other legal or

28 equitable doctrine, is arbitration before the American Arbitration Association. Nonetheless,

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

1   despite the unambiguous arbitration clause in the Lease Agreement, the Bank's express intent to

2   arbitrate the disputes as outlined in this petition, and the Bank's request that Respondents arbitrate

3   these disputes, Respondents have thus far declined to arbitrate those claims, and have

4   unambiguously manifested an intention not to arbitrate those disputes.

**PRAYER**

5

6        **NOW, THEREFORE**, Bank of America requests the following relief:

7        1.      For an Order compelling Respondents, and each of them, to arbitrate the disputes

8   identified hereinabove pursuant to the terms of the Agreement;

9        2.      For an Order staying these proceedings pending arbitration of the disputes between

10  the parties pursuant to the terms of the Lease and providing that the Court will retain jurisdiction

11  of this matter pending arbitration;

12       3.      For the Bank's attorneys fees and costs of suit; and

13       4.      For such other and further relief as the Court may deem just and proper.

14

15  DATED: June _10_, 2008                    BUCHALTER NEMER
                                              A Professional Corporation
16

17                                            By _____
18                                                  JAMES B. WRIGHT
                                                   Attorneys for Petitioner
19                                              BANK OF AMERICA, N.A.

20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**Exhibit A**

$\underline{I} \ \underline{N} \ \underline{D} \ \underline{E} \ \underline{X}$

|  |  | Page |
|---|---|---|
| ARTICLE 1 – TERM | | 1 |
| ARTICLE 2 – HOLDING OVER | | 2 |
| ARTICLE 3 – RIGHT OF INSPECTION | | 2 |
| ARTICLE 4 – REMEDIES | | 2 |
| Section 4.1. | Default | 2 |
| Section 4.2. | Performance by Landlord | 4 |
| Section 4.3. | Attorneys' Fees | 5 |
| Section 4.4. | Waiver | 5 |
| ARTICLE 5 – USE | | 6 |
| ARTICLE 6 – UTILITIES | | 6 |
| ARTICLE 7 – CARE AND MAINTENANCE | | 6 |
| ARTICLE 8 – ASSIGNMENT AND SUBLETTING | | 7 |
| Section 8.1. | Assignment | 7 |
| Section 8.2. | Subletting | 8 |
| ARTICLE 9 – DESTRUCTION | | 9 |
| Section 9.1. | Destruction-Damage – Fire Insurance | 9 |
| Section 9.2. | Destruction-Damage – Other Causes | 9 |
| Section 9.3. | Destruction-Damage – Within Last Five Years | 9 |
| ARTICLE 10 – REMOVAL OF FIXTURES | | 11 |
| ARTICLE 11 – CONDEMNATION | | 12 |
| Section 11.1. | Entire or Substantial Taking | 12 |
| Section 11.2. | Partial Taking | 13 |
| Section 11.3. | Disposition of Proceeds | 13 |
| Section 11.4. | Further Assurance | 14 |
| ARTICLE 12 – INSURANCE | | 14 |
| ARTICLE 13 – GOVERNMENTAL REGULATIONS | | 15 |
| ARTICLE 14 – QUIET ENJOYMENT | | 16 |
| ARTICLE 15 – TAXES | | 16 |
| ARTICLE 16 – OWNERSHIP OF IMPROVEMENTS | | 18 |
| ARTICLE 17 – RENT | | 18 |

-A-

EXHIBIT A

INDEX – cont'd                                                  PAGE

ARTICLE 18 – OPTIONS TO EXTEND TERM                             19

ARTICLE 19 – NOTICES                                           20

ARTICLE 20 – ARBITRATIONS                                      21

ARTICLE 21 – HOLD HARMLESS                                     21

ARTICLE 22 – FIRST RIGHT TO PURCHASE                           22

ARTICLE 23 – AGREEMENTS IN WRITING                             23

ARTICLE 24 – ASSIGNEES BOUND                                   23

ARTICLE 25 – CAPTIONS AND MARGINAL NOTES                       23

ARTICLE 26 – NO ORAL CHANGES                                   24

ARTICLE 27 – SUBORDINATION                                     24

ARTICLE 28 – SHORT FORM LEASE                                  24

ARTICLE 29 – EFFECT OF CONVEYANCE                              24

ARTICLE 30 – COMMENCEMENT OF TERM                              25

ARTICLE 31 – TERMINATION OF LEASE                              25

ARTICLE 32 – RENTAL ADJUSTMENT                                 25

ARTICLE 33 – IMPROVEMENTS AND ALTERATIONS BY TENANT            26

-B-

GROUND LEASE

THIS AGREEMENT, made and entered into this 18
day of _July_ , 19 77, by and between BANK OF
AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a national
banking association, hereinafter called "Tenant", and
Bank of America National Trust and Savings Association, as Trustee
of the Trust created by Arturo Micheletti by Substituted Declaration of
Trust dated March 13, 1931,
hereinafter called "Landlord",

W I T N E S S E T H:

ARTICLE 1

TERM

Landlord hereby leases to Tenant and Tenant hires
from Landlord those certain premises situated in the City of
San Mateo _____ , County of _San Mateo_ , State
of California, more particularly described on Exhibit "A",
attached hereto, together with (a) all buildings and improve-
ments at any time during the term located thereon, whether
constructed by Landlord or Tenant, (b) all building equipment
of every kind and nature on or in said building and improve-
ments, and (c) all and singular the appurtenances, rights and
privileges in anywise pertaining thereto, herein called "the
premises", for a term of _three hundred and sixty_
( 360 ) calendar months (plus the partial month, if any, im-
mediately following the commencement of the leased term), com-
mencing as provided in Article 30 and expiring on the last day
of the _three hundred and sixtieth_ ( 360 th)

-1-

full calendar month (the initial portion of the lease term) thereafter, plus the rental for the partial month, if any, payable in advance on the first day of each month in installments as provided in Article 17 hereof.

## ARTICLE 2

### HOLDING OVER

Should Tenant hold over the term hereby granted with the consent of Landlord, the term of this lease shall be deemed to be and shall be extended at the monthly rent then in effect, and otherwise upon the convenants and conditions in this lease contained, until either party serves upon the other thirty (30) days' written notice reciting therein the effective date of cancellation, and upon said date this lease as so extended shall terminate.

## ARTICLE 3

### RIGHT OF INSPECTION

Landlord and the agents and employees of Landlord shall have the right to enter upon said premises at all reasonable times to inspect the same to see that no damage has been or is done and to protect any and all rights of Landlord and to post such reasonable notices as Landlord may desire to protect the rights of Landlord.

## ARTICLE 4

### REMEDIES

Section 4.1. Default. This lease is made upon the

-2-

condition that if default be made in the payment of said rent and such default shall continue for more than ten (10) days after receipt of a written demand by Landlord to Tenant therefor, or if Tenant fails or neglects to perform any of Tenant's other obligations hereunder for a period of twenty (20) days after receipt of written demand by Landlord to Tenant for such performance (provided, however, if the default is of such a character as to require more than twenty (20) days, then if Tenant shall fail to use reasonable diligence in curing such default), or if Tenant shall abandon or vacate said premises, or if the estate hereby created shall be taken on execution, and such execution shall not be cancelled, satisfied or otherwise removed within thirty (30) days after notice by Landlord, or if Tenant shall be adjudicated bankrupt or insolvent according to law, or if any assignment of its property shall be made for the benefit of creditors, then and in any of said events Landlord or the legal representative of Landlord, without notice or demand, may lawfully declare said term ended, and re-enter said premises or any part thereof, either with or without process of law, and expel, remove and put out Tenant or any person or persons occupying said premises, and may remove all personal property therefrom, using such force as may be necessary to repossess and enjoy said premises as before this demise, without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant or condition and without liability to any person for damages sustained by reason of such removal. Upon

declaration by Landlord as aforesaid that the term herein provided has ended, no compensation, damage or allowance shall be made to Tenant for any buildings or additions thereto or improvements thereon and thereof directed or undertaken or performed at any time by said Tenant, and all right, title and interest of Tenant in and to said leased land, premises, buildings and improvements, whether at law or in equity, shall immediately cease and terminate, all with the same force and effect as if this lease had duly expired by efflux of the full period for which the demised premises are hereunder leased.

Section 4.2. Performance by Landlord. In the event that Tenant shall fail or neglect to do or perform any act or thing herein provided by it to be done or performed for a period of thirty (30) days after written notice from Landlord specifying the nature of the act or thing to be done or performed (excluding from said thirty (30) day period the period during which Tenant shall attempt with diligence and good faith to do or perform the act or thing which is the subject of the notice herein in this sentence provided), then Landlord may perform such act or thing for the account of Tenant and Landlord shall not be or be held liable or in any way responsible for any loss, inconvenience, annoyance or damage resulting to Tenant on account thereof, and Tenant shall repay to Landlord upon demand the entire cost and expense thereof, including compensation to the agents and servants of Landlord. Landlord shall have a right of entry upon the leased

-4-

premises through his agents, their representatives, or a receiver who may be appointed by a court for such purposes. Such entry shall not be deemed to, and shall not constitute an eviction, actual or constructive, of Tenant from the demised premises or any part thereof. Any act or thing done by Landlord pursuant to the provisions of this section shall not be or be construed as a waiver of any such default by Tenant, or as a waiver of any covenant, term or condition herein contained or of the performance thereof. All amounts payable by Tenant to Landlord under any of the provisions of this lease, if not paid when the same become due as in this lease provided, shall bear interest from the date the same became due until paid at the rate of _____eight_____ percent ( 8 %) per annum, compounded annually.

Section 4.3. Attorneys' Fees. If any action at law or in equity shall be brought to recover any rent under this lease, or for or on account of any breach of or to enforce or interpret any of the covenants, terms or conditions of this lease, or for the recovery of the possession of the leased premises, prevailing party shall be entitled to recover from the other party as part of prevailing party's costs reasonable attorneys' fees, the amounts of which shall be fixed by the court and shall be made a part of any judgment rendered.

Section 4.4. Waiver. One or more waivers of any covenant or condition by Landlord shall not be construed as a waiver of a subsequent breach of the same or any other covenant or condition, and the consent of approval by Landlord

to or of any act by Tenant requiring Landlord's consent or
approval shall not be deemed to waive or render unnecessary
Landlord's consent or approval to or of any subsequent simi-
lar act by Tenant.

ARTICLE 5

USE

Tenant agrees that it will not use the premises for
or carry on or permit upon said premises any offensive, noisy
or dangerous trade, business, manufacture or occupation or
any nuisance or anything against public policy; that the
premises shall not be used in whole or in part during the
term of this lease for any purpose or use in violation of
any of the laws, ordinances, regulations or rules of any
public authority at any time applicable thereto.

ARTICLE 6

UTILITIES

Tenant agrees that it will pay for all the fuel,
gas, oil, heat, electricity, water, power and sewerage which
may be furnished to or used in or about said premises during
the term of this lease; and that it will keep the premises
free and clear of any lien or encumbrance of any kind what-
soever created by Tenant's acts or omissions.

ARTICLE 7

CARE AND MAINTENANCE

Tenant shall keep and maintain, or cause to be

-6-

kept and maintained, all buildings, improvements and appur-
tenances, including, without limitation, sidewalks and drive-
ways, which may at any time during the lease term be located
upon the leased land in good condition and repair and in a
clean, attractive and sanitary condition, reasonable wear and
use, damage from casualties (except as otherwise provided in
Articles 9 and 11) excepted.

ARTICLE 8

ASSIGNMENT and SUBLETTING

Section 8.1.  Assignment.  It is hereby covenanted
and agreed by and between the parties hereto that Tenant may,
subject to the conditions hereinafter set forth, assign its
interest in and to this lease in the manner hereafter provided,
upon condition that at the date of assignment Tenant shall
not then be in default of any of the covenants and conditions
herein contained to be kept, observed and performed by Tenant,
and provided also that such assignment by Tenant shall be
evidenced by an instrument in writing, duly executed and ac-
knowledged by both Tenant and the assignee before a notary
public or other officer authorized by law to take acknowledg-
ments and duly recorded in the Recorder's Office of the County
of   San Mateo   , wherein and whereby such assignee shall
expressly accept and assume all of the terms, covenants and
conditions in this lease contained to be kept, observed and
performed by Tenant, and shall become bound to comply there-
with, and an executed original of such instrument of assignment

-7-

shall be delivered to Landlord wherein shall also appear the specific place of business or residence of the said assignee. The Tenant further covenants and agrees that it will not make any assignment of this lease, except in the manner and upon the conditions set forth herein, and it is agreed by and between the parties hereto that any assignment by Tenant of its interest in and to this lease without complying with the covenants and conditions aforesaid shall be null and void.

Tenant shall remain liable hereunder for the full and complete performance of all the terms, covenants and conditions hereof, notwithstanding any such assignment of the within lease and the assumption of liability of any assignee.

Each assignment that may be made shall specifically provide that Landlord may modify or alter this lease or the terms thereof in any particular and extend any indulgence he may see fit to such assignee, without in anywise relieving the Tenant of any obligation to respond to Landlord for any breach of covenants or conditions of this lease as so amended, or altered; provided, further, however, that no amendment or alteration of this lease shall enlarge or extend the liability of Tenant.

Section 8.2.  Subletting.  It is further mutually agreed between the parties hereto that Tenant may sublet all or any part of any building and/or improvements upon the land hereunder demised for any period or periods within the term hereby demised, provided that the lease or leases under which

-8-

subleasing shall be made are subject to all of the covenants, agreements and conditions of this lease, and provided further, that upon the termination of this lease such subleases shall ipso facto be terminated, provided also, that the receipt by Landlord from any subtenant or subtenants of Tenant of any rent due to Tenant be received and applied by Landlord toward the payment of the rent hereby reserved shall not be taken and construed as a release of Tenant from any of its liabilities undertaking the covenants and agreements hereunder, except to the extend of the moneys so received by said Landlord.

Any sublease by Tenant shall be evidenced by an instrument in writing, a short form of which, suitable for recording, shall be duly executed and acknowledged by both Tenant and the sublessee before a notary public or other officer authorized by law to take acknowledgments and duly recorced in the Recorder's Office of the County of San Mateo_____.  Any such sublease shall provide that such sublessee shall expressly agree to take said sublease subject to all of the terms, covenants and conditions in this lease contained to be kept, observed and performed by said sublessee.  A conformed copy of such instrument of sublease and the short form thereof shall be delivered to Landlord, in which sublease shall also appear the specific place of business or residence of said sublessee.

ARTICLE 9

DESTRUCTION

Section   9.1. Destruction-Damage - Fire Insurance.

-9-

If any buildings or improvements on the premises are partial-
ly or totally destroyed or damaged by a risk against which
insurance with a licensed insurance company under a normal
fire insurance policy with an extended coverage endorsement
attached , in an amount of not less than eighty percent (80%)
of its full insurable value, excluding foundations and exca-
vations would cover, except to the extent hereinafter pro-
vided, Tenant shall restore, or cause to be restored, such
damage or destruction; provided, however, Tenant may, at its
sole option, remove such damaged or destroyed building or
buildings and replace it or them with another building or
buildings as in its sole option may elect; provided, said
building is comparable in value to that which is being re-
placed. Any insurance proceeds available, whether from Ten-
ant's self-insurance plan or otherwise, shall be the property
of Tenant, and Landlord shall have no interest therein.

     Section 9.2. <u>Destruction-Damage</u> - <u>Other Causes.</u>
In the event the building or buildings on the demised premises
shall be partially or totally damaged or destroyed from any
cause whatsoever, this lease shall be unaffected and the
rights or obligations of Tenant shall not be affected thereby
(except as otherwise provided in Section 9.3 hereof), except
that Landlord or Tenant may, at the option of either party,
elect to terminate this lease by notice to the other within
ninety (90) days after the occurrence of any such damage or
destruction if Tenant is not obligated ~~to or does not elect~~
to repair such damage or place another building or buildings

-10-

on the demised premises pursuant to the provisions of Section
9.1 hereof.

Section 9.3. <u>Destruction-Damage - Within Last Five
Years of Term</u>.   In the event the building and/or improvements
on the premises are damaged or destroyed (i) within the last
five (5) years of the then existing term of this lease, or
any extended term thereof, and (ii) to such an extent that
restoration in the original form or construction of new im-
provements is not economically feasible in the opinion of
Tenant, this lease may be terminated at Tenant's option by
notice served upon Landlord within ninety (90) days following
any such damage or destruction, and such damage or destruction
is covered under Tenant's self-insurance plan, Tenant shall
pay to Landlord the amount, if any, which an insurance company
would have paid as a result of said loss, damage or destruc-
tion if Tenant had secured a fire insurance policy with an
extended ~~risk~~ coverage endorsement/attached insuring the build-
ing and improvements against the perils covered by said policy
and endorsement to the extent of not less than eighty percent
(80%) of the full fair insurable value thereof.



ARTICLE 10

<u>REMOVAL OF FIXTURES</u>

It is agreed that at the expiration or sooner termina-
tion of this lease term, or of any renewal or extension thereof,
Tenant  may  remove all, any or any part of the fixtures, vault
doors, safe-deposit boxes, walk-up windows, drive-up windows,
and all other trade fixtures placed in said premises by Tenant

-11-

under the terms hereof or under the terms of any former ten-
ancy, and for the purpose of this section all such enumerated
items and other trade fixtures placed in said premises by
Tenant shall not be deemed alterations, additions or improve-
ments to the premises, but it is agreed that, upon the expira-
tion or sooner termination of the lease term, or any extension
or renewal thereof, Tenant shall not be required to remove
such fixtures or any part thereof placed in said premises by
Tenant unless it elects to do so.  In the event Tenant shall
remove any such fixtures as herein provided, Tenant shall re-
pair any damage to the premises occasioned thereby.

### ARTICLE 11

#### CONDEMANTION

Section 11.1.  <u>Entire or Substantial Taking</u>.  If
title to all of the premises or so much thereof be taken
for any public or quasi-public use under any statute or
by right of eminent domain, or by private purchase in lieu
thereof, so that a reasonable amount of reconstruction of
the premises and any building or improvements thereon will
not result in the premises and the building or improvements
thereon being a practical improvement and reasonably suit-
able for Tenant's continued occupancy for the uses and pur-
poses for which the premises are leased, this lease shall
terminate as of the date that possession of said premises,
or any part thereof, be taken and rent and other charges
shall be adjusted as of such date.

-12-

Section 11.2. <u>Partial Taking</u>. If any part of the premises shall be so taken, including any portion of any building or improvements thereon, and the remaining part thereof (after reconstruction of the then existing building in which the premises are located) is reasonably suitable for Tenant's continued occupancy for the purposes and uses for which the premises are leased, this lease shall, as to the part so taken, terminate as of the date that possession of such part of said premises be so taken and the rent shall be reduced in the same proportion that the land area taken bears to the original land area demised, and Tenant shall, at its own cost and expense, make all necessary repairs or alterations to the building and improvements situated thereon so as to constitute the portion of the building and improvements not taken as a complete architectural unit.

Section 11.3. <u>Disposition of Proceeds</u>. There shall be a joint award or settlement made to and with Landlord and Tenant for such part of the premises so taken, and any sums legally recoverable are to be paid therefor, including damage to the leasehold interest, if any, the fee and the remainder. The proceeds of such joint award, settlement or compensation (or any separate awards, settlements or compensation made in lieu thereof), which sums so legally recoverable are paid, shall be distributed as follows: (i) the amount required for the restoration or rehabilitation of any building or improvements (in the event of a partial taking and the continuance of this lease as to the premises not so taken) shall be paid to Tenant to be used solely for that

-13-

purpose, (ii) such portion of said proceeds as shall represent Tenant's depreciated cost of the improvements or building made or erected on the premises by Tenant shall be paid to Tenant. The term "depreciated cost" within the meaning of this section means the amount which is the then Tenant's adjusted cost basis of said building and improvements should Tenant depreciate said building and improvements over the then remaining term of this lease including the option periods; provided, that said residue shall be an amount not less than the value of the land leased hereunder if taken in its entirety by right of eminent domain, or in the event that part of said leased land is taken, then the value of such part plus the damages, if any, caused to the remaining portion shall be the amount included in said residue; it being understood that said value and said damages shall be determined and ascertained as of the date of said taking by right of eminent domain and shall be determined and fixed in said eminent domain proceedings and shall in no event include the value of any improvements on said land leased; (iii) the residue of said proceeds shall belong to and be paid over to Landlord on his proper share of said award, settlement or compensation.

Section 11.4. Further Assurance. Each party agrees to execute and deliver to the other all instructions that may be required to effectuate the provisions hereof.

ARTICLE 12

INSURANCE

Tenant agrees that it will at all times and at its

-14-

own expense during the term or extended term of this lease main-
tain in force a policy or policies of comprehensive liability
insurance, including property damage, written by one or more
responsible insurance carriers which will insure Tenant and
Landlord against liability for injury to persons and/or prop-
erty and death of any person or persons occurring in or about
the premises.  Liability under such insurance shall not be less
than TWO HUNDRED THOUSAND DOLLARS ($200,000.00) for any one (1)
person injured or killed and not less than FIVE HUNDRED THOUSAND
DOLLARS ($500,000.00) for any one (1) accident.  The insurance
provided for in this section may be a general policy or poli-
cies covering all of Tenant's properties.

ARTICLE 13

GOVERNMENTAL REGULATIONS

Tenant shall promptly observe and comply with all
laws, orders, regulations, rules, ordinances and require-
ments of the federal, state, county and city governments and
of all other governmental authorities, affecting the leased
premises or appurtenances or any part thereof, and of all
their departments, bureaus or officials, whether such laws
orders, regulations, rules or ordinances relate to alterations
or requirements or repairs, either inside or outside, extra-
ordinary or ordinary, to or in and about the leased premises,
or any building thereon, or in any vaults, passageways, fran-
chises or privileges appurtenant thereto or connected with the
enjoyment thereof, or to changes or requirements incident to
or as a result of any use or occupation thereof, or otherwise,
and whether the same are in force at the commencement of the

15-

lease term or may in the future be passed, enacted or directed,
and Tenant shall pay all costs, expenses, claims, fines, pen-
alties and damages that may in any manner arise out of or be
imposed because of failure of Tenant to comply with the pro-
visions of this section.

ARTICLE 14

QUIET ENJOYMENT

Landlord covenants that there are not now any re-
strictive covenants, zoning or other ordinances, regulations
or easements which will prevent Tenant from conducting its
usual business or any department thereof in the premises or
which will prevent the construction, alteration or remodeling
of the premises to meet the needs of Tenant; and that if any
such restrictive covenant, zoning or other ordinance, regula-
tion, or easement is hereafter enacted or found to exist
prior to the time that such construction, alteration or re-
modeling is completed, then Tenant may, at its option, termi-
nate this lease.

ARTICLE 15

TAXES

Tenant will pay before delinquency all taxes and
assessments levied or assessed against any trade fixtures,
equipment or personal property placed or kept by it upon the
demised premises.

Tenant also agrees to pay before delinquency, as
additional rent, all real property taxes and assessments

-16-

which are levied or assessed against the demised premises
and/or the improvements thereon during the term of this lease
or any renewal thereof.

It is agreed benefit may be taken of the provisions
of any statute or ordinance permitting such taxes and assess-
ments to be paid over a period of time and Tenant shall be
obligated to pay only the installments of such taxes and as-
sessments which are attributable to the term of this lease.
All real property taxes and assessments for the years in
which this lease commences and terminates shall be apportion-
ed between Landlord and Tenant on a daily basis.

If the demised premises are separately assessed,
Tenant will furnish to Landlord upon request evidence of the
payment prior to delinquency of said taxes and assessments
herein agreed to be paid by Tenant.

If it shall so desire, Tenant may at any time con-
test the validity of any assessment, tax or levy.  In this
event, Landlord will offer no objection and at the request
of Tenant, but without expense to Landlord, will cooperate
with Tenant in such contest.  Tenant hereby agrees to indemnify
and save Landlord harmless against any and all loss, cost or
expense of any kind in connection therewith.

Nothing herein contained shall be construed to re-
quire the Tenant to pay any franchise, estate, inheritance,
succession, capital levy, or transfer tax of the Landlord
growing out of or connected with this lease or the Landlord's
rights in the demised premises or any income, excess profits
or revenue tax, or any other tax, assessment, rate or charge

upon the rentals payable by the Tenant under this lease.  If the Tenant shall be required by law to pay any such tax, assessment, rate or charge specified in this paragraph, the Tenant shall have the right to deduct the amount thereof from subsequent installments of rent due from the Tenant under the terms of this lease.

## ARTICLE 16

### OWNERSHIP OF IMPROVEMENTS

The parties hereto agree that irrespective of the fact that the property hereunder demised is improved, the rental hereunder reserved is a ground rental and, except as otherwise herein provided in Article 9,  Landlord shall at all times be entitled to receive said rental in full, irrespective of the tearing down or demolition of, or any injury or damage to, or the destruction of any present and existing building and/or improvements or of any future building and/or improvements or the lapse of any time required for the reconstruction or replacement of any thereof.

Any building hereafter constructed upon the demised land in consonance with any of the provisions of this lease shall become the property of and be surrendered to Landlord upon expiration of the leased term; and Tenant shall have no obligation to remove any such improvements or building at the expiration of the lease term.

## ARTICLE 17

### RENT

Tenant shall pay Landlord monthly in advance on the

-18-

first day of each and every month  Two Thousand and no/100

DOLLARS ($ 2000.00     ) per month for each month of the first five (5) year period of the initial lease term, rental for partial months being prorated. Rent shall be adjusted at 5 year intervals thereafter as provided in Article 32 herein.

ARTICLE 18

OPTIONS TO EXTEND TERM

Tenant shall have the following options to extend the term of this lease under the same terms, covenants and conditions hereof, except as to rental.  Landlord grants Tenant four (4) successive five (5) year options to extend this agreement under the same terms and conditions herein provided.

Each such option shall be exercised by Tenant giving to Landlord a notice that it is exercising the same at least six (6) months prior to the date upon which this lease, or as it may have been extended, would terminate if such option were not exercised.  The rent to be paid for each such extended term or terms shall be adjusted as provided in Article 32 herein.



## ARTICLE 19

### NOTICES

All notices, statements, demands, requests, consents, approvals, authorizations, offers, agreements, appointments, designations, or refusals hereunder by either party to the other shall be in writing and shall either be personally served upon the other party or sent by United States registered mail, return receipt requested, postage prepaid. If sent by mail, the same shall be addressed to Landlord or Tenant, as the case may be, at the following addresses, or to such address as the parties hereto shall designate from time to time:

Landlord:    Bank of America N. T. & S. A.
Trust Department
400 El Camino Real
P. O. Box 1991
San Mateo, CA 94402

Tenant:    Bank of America N. T. & S. A.
c/o Continental Service Company
260 Fifth Street
San Francisco, California 94103.

-20-

ARTICLE 20

ARBITRATION

Any question, dispute, controversy or misunderstanding arising under any provision of this lease shall be settled by arbitration.  The party asking for arbitration shall request arbitration through the American Arbitration Association and the decision of that association shall be binding unto the parties hereto.  The expense of the arbitration shall be borne as the American Arbitration Association directs.

ARTICLE 21

HOLD HARMLESS

Tenant covenants and agrees that Landlord shall not at any time or to any extent whatsoever be liable, responsible, or in anywise accountable for any loss, injury, death or damage to persons or property which at any time during the term of this lease may be suffered or sustained by Tenant or by any person, who may at any time during the term of this lease be using or occupying or visiting the leased premises or be in, on or about the same, whether such loss, injury, death or damage shall be caused by or in anywise result from or arise out of any act, omission or negligence of Tenant or of any occupant, subtenant, visitor, or user of any portion of the leased premises, or shall result from or be caused by any other matter or thing, whether of the same kind as or of a different kind than the matters or things above set forth, and Tenant shall

-21-

forever indemnify, defend, hold and save Landlord free and harmless of, from and against any and all claims, liability, loss or damage whatsoever on account of any such loss, injury, death or damage.  Tenant hereby waives all claims against Landlord for damages to property in, upon or about the premises, from any cause arising at any time during the term of this lease; provided, however, that the foregoing waiver in this sentence contained shall not apply in the event such damage to property or such injuries to persons in, upon or about the premises shall be caused by the negligent acts or omission of Landlord, its agents or employees.

## ARTICLE 22

## FIRST RIGHT TO PURCHASE

If at any time during the term of this lease, or any extension or renewal thereof, Landlord elects to sell or offers for sale the demised premises, Landlord shall notify Tenant in writing of its intention so to do, and thereafter Tenant shall be allowed a period of sixty (60) working days within which to negotiate for the purchase of said property. In the event Landlord and Tenant fail to agree upon the purchase of said premises within said period of time, and thereafter Landlord sells the property, such sale shall be consummated subject to Tenant's rights under the terms of this lease, or any extension or renewal thereof (including, but not limited to Tenant's renewal rights).

-22-

ARTICLE 23

AGREEMENTS IN WRITING

There are no oral agreements or understandings between the parties hereto affecting this lease, and this lease supersedes and cancels any and all previous oral and written negotiations, arrangements, agreements and understandings (including that certain lease dated June 22, 1959 for the premises known as 240-250 Main Street in San Mateo, California) between the parties hereto with respect to the subject matters thereof, and none thereof shall be used to interpret or construe this lease.

ARTICLE 24

ASSIGNEES BOUND

Subject to the provisions of this lease with respect to assignment by Tenant, the covenants, conditions and provisions contained herein shall be binding upon and inure to the benefit of Landlord, its successors and assigns, and Tenant, its successors and assigns.

ARTICLE 25

CAPTIONS AND MARGINAL NOTES

The captions, headings and marginal notes throughout this lease are for convenience and reference only and the words contained therein shall in no way be held or deemed to define, limit, describe, explain, modify, amplify or add to the interpretation, construction or meaning of any provision of or the scope or intent of this lease nor in any way affect this lease.

## ARTICLE 26

### NO ORAL CHANGES

This lease may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

## ARTICLE 27

### SUBORDINATION

Landlord agrees that any mortgage, deed of trust, or any instruments of security which have been or shall be placed on the land or buildings, or land and buildings of which the premises form a part, as well as all renewals or extensions thereof, shall be subordinate to this lease and to the interests of Tenant thereunder.

## ARTICLE 28

### SHORT FORM LEASE

The parties agree to execute this lease, or at Tenant's election, a short form thereof, in a manner so that it may be recorded in the office of the County Recorder.

## ARTICLE 29

### EFFECT OF CONVEYANCE

In the event of a sale or conveyance by Landlord

-24-

to any one person, firm, association or corporation, the entire
interest of such conveyor, transferor, or assignor of the real prop-
erty demised, shall be deemed to have been conveyed, transferred and
assigned, if there is delivered to Tenant an original of a valid, bind-
ing and sufficient agreement in writing executed and acknowledged by
such conveyee, transferee or assignee and directly enforceable by
Tenant whereby such conveyee, transferee or assignee assumes and agrees
to perform all of the covenants, provisions and conditions of this lease
remaining on the part of the conveyor, transferor or assignor to be
performed, then and in such event the conveyor, transferor or assignor
shall be released from any and all liability arising or accruing under
this lease after the date of such conveyance, transfer or assignment.

### ARTICLE 30

#### COMMENCEMENT OF TERM

This lease shall commence on August 1, 1977, or the beginning
of the first calendar month after approval by Bank of America Senior
Management, whichever date occurs later.  In the event that said approval
is not obtained, this lease shall terminate and the parties hereto are
relieved of any and all obligations hereunder.

### ARTICLE 31

#### TERMINATION OF LEASE

In the event that Tenant is unable to obtain all necessary
governmental approvals to make all such improvements on the leased prem-
ises as Tenant deems necessary for the conduct of its business, Tenant
shall have the option to terminate this lease by giving the Landlord
notice within thirty (30) days after Tenant has been denied such approvals.

### ARTICLE 32

#### RENTAL ADJUSTMENT

The rent payable by Tenant to Landlord shall be adjusted at five
(5) year intervals, during the initial term of this lease, and any ex-
tension hereof pursurant to Article 18 hereof, as herein provided.

Commencing on the date five (5) years after rent commences under
this Lease, and periodically every 5 years thereafter, the rental as
provided in Paragraph 17 of this lease, shall be adjusted using an ad-
justment factor based on the change in the cost of living index as defined
hereinbelow.  The index for each such 5 year period shall be the

quotient of a fraction in which the numerator is the cost of living index for the month six (6) months prior to the beginning of such 5 year period, and the denominator is the cost of living index of the month rent commenced under this Lease. The adjustment factor for each such 5 year period shall be the cumulative total of 100% of any increase from 0% to 35% in the cost of living index during the previous period, 75% of any increase from 35% to 75%, 50% of any increase from 75% to 150% and 25% of any increase over 150%. The total monthly rent for each such 5 year period shall be the total monthly rent of the previous 5 year period multiplied by the adjustment factor. For instance, the adjustment factor for a 40% increase in the cost of living index over five (5) years would be 1.00 (1 + .35) + .75 (.05) = 1.385. In no event shall the total monthly rent go below $2000.

The cost of living index to be used for the determination of the adjusted monthly rent as provided for above shall be the United States Consumer Price Index, for all items (1967 equals 100), published by the Bureau of Labor Statistics of the U.S. Department of Labor. If for any reason whatsoever there is any change in the method of calculation or formulation of said price index, or if that index shall no longer be published, then another index generally recognized as authoritative shall be substituted by agreement. In any event, the base used by any new index, shall be reconciled to the 1967 index.

ARTICLE 33

IMPROVEMENTS AND ALTERATIONS BY TENANT

Tenant shall be allowed to demolish existing improvements, to construct new improvements, and to make and perform such interior alterations and remodeling, at Tenant's expense, as Tenant deems necessary for the conduct of its business. It is agreed that at the expiration of the term of this lease, or of any renewal or renewals, extension or extensions thereof, that Tenant shall construct a demising wall, at its expense, on the premises to separate any improvements constructed at Tenant's expense, on the said premises from any

improvements constructed and alterations made and performed on the adjacent Tenant-owned property. All other restoration work required, or work necessary to condition said premises for tenancy shall be at the expense of the Landlord. Notwithstanding the provisions of this Article, Tenant shall not be obligated to construct said demising wall if Tenant elects to terminate this lease in accordance with the provisions of Article 9.2 and 9.3.

Tenant shall be allowed to install, replace, and repair such building mounted signing, business identification symbols and flag-poles as Tenant believes necessary for the conduct of its business.

IN WITNESS WHEREOF, the parties hereto have executed this lease on the day and year first above written.

Bank of America National Trust
and Savings Association, as Trustee
of the Trust Created by Arturo
Micheletti by Substituted Declaration
of Trust dated March 13, 1931.

BY _____
    L. P. Johnston
    Vice President

BY _____
    D. R. Decherd
    Trust Officer

                    LANDLORD

BANK OF AMERICA NATIONAL TRUST

AND SAVINGS ASSOCIATION

BY _____
    ASSISTANT VICE PRESIDENT

BY _____
    VICE PRESIDENT

                    TENANT

- 27 -

AUG 1 1987

## AMENDMENT TO SHORT FORM LEASE

THIS AMENDMENT, made this 21st day of April , 1978, by and between BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a national banking association, ("Tenant"), and Bank of America National Trust and Savings Association, as Trustee of the Trust created by Arturo Micheletti by Substituted Declaration of Trust dated March 13, 1931, ("Landlord"),

### W I T N E S S E T H:

Landlord and Tenant entered into a Lease for premises located in the City of San Mateo, County of San Mateo and State of California, for a term commencing October 1, 1977 and terminating September 30, 2007, subject to that unrecorded Lease between the parties, dated July 18, 1977. A Short Form Lease, dated December 16, 1977, between said parties, was recorded as Doc. 38899AM Reel 7723 Pages 667, 668, 669, and 670 in the Official Records of San Mateo County, California on March 7, 1978.

Landlord and Tenant now wish to amend the Short Form Lease, dated December 16, 1977, to include the following provision, as specified in the unrecorded Lease between the parties:

ALTERATIONS:  Tenant shall be allowed to demolish existing improvements, to construct new improvements, and to make and perform such interior alterations and remodelling, at Tenant's expense, as Tenant deems necessary for the conduct of its business.  It is agreed that at the expiration of the term of this lease, or of any renewal or renewals, extension or extensions thereof, that Tenant shall construct a demising wall, at its own expense, on the premises to separate any improvements constructed at Tenant's expense on the said premises from any improvements constructed and alterations made and performed on the adjacent Tenant owned property.

IN WITNESS WHEREOF, the parties hereto have executed this instrument the day and year first hereinabove written.

BANK OF AMERICA NATIONAL TRUST          BANK OF AMERICA NATIONAL TRUST
AND SAVINGS ASSOCIATION                      AND SAVINGS ASSOCIATION,
                                                       as Trustee of the Trust created
                                                       by Arturo Micheletti by Substituted
                                                       Declaration of Trust dated March 13,
                                                       1931

                        Vice President

OF CALIFORNIA ) ss.
Y OF SAN MATEO )

On the 25th day of April , 19 78 , before me, Margaret Hogan ary Public in and for said County and State, personally appeared D. R. Dechard to me to be the Trust Officer , and John Beatty , known to me to e Sr. Property Management Officer of the Bank of America National Trust and Savings iation, a national banking association, that they executed the foregoing instrument as ustee of the Trust of Arturo Micheletti VIF 245-0 sed, and known to me to be the persons who executed the same on behalf of said national g association therein named, and acknowledged to me that such national banking ation therein named executed the same as Trustee .

WITNESS MY HAND AND OFFICIAL SEAL,


OFFICIAL SEAL
MARGARET M. HOGAN
NOTARY PUBLIC - CALIFORNIA
SAN MATEO COUNTY
My comm. expires JAN 8, 1980

*Margaret M. Hogan*
Notary Public in and for the County
of San Mateo, State of California

My Commission expires *Jan 8, 1980*

9150-8