1  BUCHALTER NEMER
   A Professional Corporation
2  JAMES B. WRIGHT (SBN: 63241)
   RICHARD C. DARWIN (SBN: 161245)
3  333 Market Street, 25th Floor
   San Francisco, CA 94105-2126
4  Telephone: (415) 227-0900
   Facsimile: (415) 227-0770
5  *jwright@buchalter.com*

6  Attorneys for Petitioner
   BANK OF AMERICA, N.A.
7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11  BANK OF AMERICA, N.A., a national        CASE NO. CV 08-2902 JSW
    banking association,
12                                           **BANK OF AMERICA'S**
                  Petitioner,                **ADMINISTRATIVE MOTION TO**
13                                           **CONSIDER WHETHER CASES**
            vs.                              **SHOULD BE RELATED;**
14                                           **DECLARATION OF RICHARD C.**
    MICHELETTI FAMILY PARTNERSHIP,           **DARWIN**
15  a California Limited Partnership, ARTHUR **[LOCAL RULE 3-12]**
    MICHELETTI, an individual, and JANICE
16  MICHELETTI, an individual,
17            Respondents.
18

19         Pursuant to Civil Local Rule 3-12, Bank of America, N.A., ("Bank of America") hereby

20  moves for an order deeming the case of *Micheletti v. Bank of America, N.A. and Larry Johnston*,

21  Case No. CV 08-3557 BZ, to be related to the instant action, *Bank of America, N.A. v. Micheletti*

22  *Family Partnership, Arthur Micheletti and Janice Micheletti*, Case No. CV 08-2902 JSW. This

23  motion is made on the grounds that (i) the two actions concern substantially the same parties,

24  transactions and events, and (ii) there will be an unduly burdensome duplication of labor and

25  expense, and the possibility of conflicting results, if the cases are conducted before different

26  judges, as explained in detail below.

27         On or about June 11, 2008, Bank of America filed a petition to compel arbitration in the

28  above-captioned action (the "Federal Petition"). A true and correct copy of the Federal Petition is

BN 2120246v1                           1                        **CV 08-2902 JSW**
    **ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES RELATED**

1  attached as Exhibit A to the Declaration of Richard C. Darwin.  Arthur Micheletti, Janice

2  Micheletti, and the Micheletti Family Partnership were all hand served with a summons and the

3  Federal Petition on June 13, 2008.  In the Federal Petition, Bank of America alleged that disputes

4  have arisen between itself and Arthur Micheletti, Janice Micheletti, and the Micheletti Family

5  Partnership ("Partnership") relating to the terms of a Lease Agreement for premises located in

6  San Mateo, California (the "Lease Agreement"), and relating to allegations by the Michelettis that

7  Bank of America breached a fiduciary duty in its dual role as the trustee of a trust that owned the

8  subject premises, and as the tenant in the Lease Agreement.  On the basis of those disputes, and

9  the existence of an arbitration provision in the Lease Agreement, Bank of America seeks an order

10  from this federal district court compelling the parties to arbitrate the aforementioned disputes.

11      On or about July 16, 2008, in an effort to avoid federal jurisdiction, plaintiff Art

12  Micheletti ("Micheletti") filed an action in the Superior Court of the State of California in and for

13  the County of San Francisco, entitled "*Art Micheletti, an individual, Plaintiff. v. Bank of America,*

14  *N.A., a national banking association, Larry Johnston, an individual, and Does 1-10, Defendants,*"

15  Case No. CGC 08-477590 (the "State Action") to adjudicate in state court the same claims raised

16  in the Federal Petition. A true and correct copy of the complaint in the State Action is attached as

17  Exhibit B to the Declaration of Richard C. Darwin.

18      On July 24, 2008, Bank of America removed the State Action to this court on the basis of

19  diversity jurisdiction, and it now bears the caption *Micheletti v. Bank of America, N.A. and Larry*

20  *Johnston*, Case No. CV 08-3557 BZ.  A true and correct copy of the Notice of Removal is

21  attached as Exhibit C to the Declaration of Richard C. Darwin.

22      Because the claims and issues in the two actions are virtually identical, address the same

23  transactions and subject matter, and involve the same parties, the two actions should be deemed

24  related pursuant to the standards set forth in Local Rule 3-12(a).

25      In an email to opposing counsel dated July 25, 2008, Bank of America sought a stipulation

26  that the Federal Petition and the removed State Action were related for purposes of Local Rule 3-

27  12.  *See* Exhibit D to Declaration of Richard C. Darwin.  Bank of America never received a

28  response to that request.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2120246v1                                    2                          **CV 08-2902 JSW**

**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES RELATED**

1    DATED: July 28, 2008                    Respectfully submitted,

2                                            BUCHALTER NEMER
                                             A Professional Corporation
3

4
                                            By:_____
5                                                RICHARD C. DARWIN
                                                Attorneys for Petitioner
6                                               BANK OF AMERICA, N.A.

7

8

9                    **DECLARATION OF RICHARD C. DARWIN**

10        I, Richard C. Darwin, do hereby declare and say:

11        1.    I am an attorney licensed to practice before this district court and all of the courts

12   of the State of California, and am a shareholder in the law firm of Buchalter Nemer, counsel of

13   record for Bank of America, N.A. in this action. I make this declaration on my own personal

14   knowledge. If called as a witness, I could and would competently testify to the matters contained

15   herein.

16        2.    Attached as Exhibit A to this declaration is a true and correct copy of the Petition

17   to Compel Arbitration filed by Bank of America in this action on June 11, 2008. This Petition

18   was served on Respondents by hand on June 13, 2008.

19        3.    Attached as Exhibit B to this declaration is a true and correct copy of the

20   complaint filed by Art Micheletti in San Francisco Superior Court on July 16, 2008 (the "State

21   Action").

22        4.    On July 24, 2008, Bank of America removed the State Action to this court on the

23   basis of diversity jurisdiction, and it now bears the caption *Micheletti v. Bank of America, N.A.*

24   *and Larry Johnston*, Case No. CV 08-3557 BZ. A true and correct copy of the Notice of

25   Removal is attached hereto as Exhibit C.

26        5.    On Friday, July 25, 2008, I sent an e-mail to James Wagstaffe and Adrian Sawyer,

27   counsel of record for Art Micheletti, Janice Micheletti, and the Micheletti Family Partnership, in

28   which I requested a stipulation that the Federal Petition and the removed State Action were

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES RELATED**

1  related for purposes of Local Rule 3-12.  A true and correct copy of that email is attached to this

2  declaration as Exhibit D.  I have not received a response to that request.

3       I declare under penalty of perjury under the laws of the United States and the State of

4  California that the foregoing is true and correct.

5       Executed this 28th day of July, 2008, in San Francisco, California.

6

7                     _____

8                           Richard C. Darwin

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A**

1  BUCHALTER NEMER
   A Professional Corporation
2  JAMES B. WRIGHT (SBN: 63241)
   RICHARD C. DARWIN (SBN: 161245)
3  333 Market Street, 25th Floor
   San Francisco, CA 94105-2126
4  Telephone: (415) 227-0900
   Facsimile: (415) 227-0770
5  *jwright@buchalter.com*

6  Attorneys for Petitioner
   BANK OF AMERICA, N.A.
7

E-filing

8              UNITED STATES DISTRICT COURT                EMC

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  BANK OF AMERICA, N.A., a national       CASE NO.        2902
    banking association,
12                                          **BANK OF AMERICA'S PETITION
                    Petitioner,             TO COMPEL CONTRACTUAL**
13                                          **ARBITRATION**
           vs.
14
    MICHELETTI FAMILY PARTNERSHIP, a
15  California Limited Partnership, ARTHUR
    MICHELETTI, an individual, and JANICE
16  MICHELETTI, an individual,

17                  Respondents.

18

19
                    **INTRODUCTORY ALLEGATIONS**
20
          1.     Petitioner, Bank of America, N.A. (the "Bank") is a national banking association
21
    with its headquarters in Charlotte, North Carolina.
22
          2.     Respondent Arthur Micheletti is a resident of San Mateo County, California, and
23
    was a beneficiary of the trust created by Arturo Micheletti by substituted declaration of trust dated
24
    March 13, 1931 (the "Trust").
25
          3.     Respondent Janice Micheletti is a resident of San Mateo County, California.
26
          4.     Arthur Micheletti and Janice Micheletti (collectively, the "Michelettis"), are the
27
    general partners of the Micheletti Family Partnership (the "Partnership"), a California limited
28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2002013v3                              1

1   partnership.  Upon information and belief, the Bank alleges that the Partnership is organized

2   under and pursuant to the laws of the State of California, with its principal place of business in

3   San Mateo County, California.

4          5.      On or about July 18, 1977, Bank of America N.T. & S.A., as the tenant, entered

5   into a lease agreement with the Trust, as landlord, for premises located in San Mateo, California

6   (the "Lease Agreement").  A true and correct copy of the Lease Agreement, and amendments

7   thereto, is attached hereto as Exhibit A.

8          6.      The Bank is the successor in interest to Bank of America N.T. & S.A.  The

9   Partnership is the successor in interest to the Trust.

10                          **JURISDICTION AND VENUE**

11         7.      This Petition involves a dispute between citizens of different states, as the Bank is

12  a national banking association with its principal place of business in Charlotte, North Carolina,

13  the Respondents are either organized in, or citizens of, the State of California, and the amount in

14  controversy exceeds $75,000, exclusive of interest and costs.  Diversity jurisdiction is therefore

15  proper under 28 U.S.C. Section 1332.

16         8.      Venue is proper in this district because the Lease Agreement which is the subject

17  of this lawsuit was entered into, and was to be performed, in San Mateo County, California.

18                          **INTRADISTRICT ASSIGNMENT**

19         9.      Pursuant to Local Rule 3-2(d), this Petition should be assigned to the San

20  Francisco or Oakland Division, as a substantial part of the events giving rise to the claims

21  addressed in this Petition occurred in San Mateo County, California.

22                          **OPERATIVE ALLEGATIONS**

23         10.     The premises that are the subject of the Lease Agreement are located at 251, 253

24  255 and 257 South B Street, and 240 and 250 Main Street, in San Mateo, California (the

25  "Premises").

26         11.     Disputes have arisen between the Bank, on the one hand, and the Partnership and

27  Micheletti on the other, regarding the Lease Agreement.  Specifically, the Lease Agreement

28  provides:  (i) that the tenant may construct new improvements and interior alterations and

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2002013v3                                    2

1    remodeling that the tenant deems necessary to the conduct of its business, and (ii) that upon the

2    expiration of the lease term, the tenant shall construct a demising wall on the Premises "to

3    separate any improvements constructed at Tenant's expense, on the said premises from any

4    improvements constructed and alterations made and performed on the adjacent Tenant-owned

5    property." Lease Agreement, Article 33.

6        12.    Notwithstanding the clear language of the Lease Agreement, and the Bank's

7    express willingness to meet its obligations under the Lease terms, the Partnership has demanded,

8    and continues to demand that, in addition to the construction of the demising wall, the Bank

9    remodel the Premises and return them to the exact condition they were in at the time the Lease

10    Agreement was signed in July of 1977. In addition, the Partnership is demanding that the Bank

11    perform other repairs at the Premises and asserting damage claims well in excess of $1 million.

12        13.    Arthur Micheletti, as the beneficiary of the Trust, has further alleged and claimed

13    that the Lease Agreement is invalid and should be revoked because the Bank's predecessor-in-

14    interest allegedly breached its fiduciary duties as the trustee of the Trust by signing the Lease

15    Agreement both as trustee/landlord and as tenant.

16        14.    The Lease Agreement contains a broad arbitration clause which requires the

17    arbitration of any and all disputes relating to the Lease Agreement. Specifically, pursuant to

18    Article 20 of the Lease Agreement, "any question, dispute, controversy or misunderstanding

19    arising under any provision of this lease shall be settled by arbitration. The party asking for

20    arbitration shall request arbitration through the American Arbitration Association and the decision

21    of that association shall be binding unto the parties hereto."

22        15.    The disputes alleged herein affect interstate commerce, as they are between

23    citizens of different states.

24        16.    Pursuant to the express agreement of the parties to this Action or their

25    predecessors in interest which binds them, the only proper forum for the resolution of the claims

26    asserted by the Partnership and Micheletti, including but not limited to the questions of whether

27    those claims are barred by the statute of limitations, laches, estoppel, or any other legal or

28    equitable doctrine, is arbitration before the American Arbitration Association. Nonetheless,

1    despite the unambiguous arbitration clause in the Lease Agreement, the Bank's express intent to

2    arbitrate the disputes as outlined in this petition, and the Bank's request that Respondents arbitrate

3    these disputes, Respondents have thus far declined to arbitrate those claims, and have

4    unambiguously manifested an intention not to arbitrate those disputes.

**PRAYER**

6        **NOW, THEREFORE**, Bank of America requests the following relief:

7        1.       For an Order compelling Respondents, and each of them, to arbitrate the disputes

8    identified hereinabove pursuant to the terms of the Agreement;

9        2.       For an Order staying these proceedings pending arbitration of the disputes between

10   the parties pursuant to the terms of the Lease and providing that the Court will retain jurisdiction

11   of this matter pending arbitration;

12       3.       For the Bank's attorneys fees and costs of suit; and

13       4.       For such other and further relief as the Court may deem just and proper.

14

15   DATED: June  _10_ , 2008            BUCHALTER NEMER
                                        A Professional Corporation
16

17

18                                      By_____
                                           JAMES B. WRIGHT
19                                         Attorneys for Petitioner
                                           BANK OF AMERICA, N.A.
20

21

22

23

24

25

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2002013v3

**Exhibit A**

I N D E X

|  |  | Page |
|---|---|---|
| ARTICLE 1 – TERM | | 1 |
| ARTICLE 2 – HOLDING OVER | | 2 |
| ARTICLE 3 – RIGHT OF INSPECTION | | 2 |
| ARTICLE 4 – REMEDIES | | 2 |
| | Section 4.1. Default | 2 |
| | Section 4.2. Performance by Landlord | 4 |
| | Section 4.3. Attorneys' Fees | 5 |
| | Section 4.4. Waiver | 5 |
| ARTICLE 5 – USE | | 6 |
| ARTICLE 6 – UTILITIES | | 6 |
| ARTICLE 7 – CARE AND MAINTENANCE | | 6 |
| ARTICLE 8 – ASSIGNMENT AND SUBLETTING | | 7 |
| | Section 8.1. Assignment | 7 |
| | Section 8.2. Subletting | 8 |
| ARTICLE 9 – DESTRUCTION | | 9 |
| | Section 9.1. Destruction-Damage – Fire Insurance | 9 |
| | Section 9.2. Destruction-Damage – Other Causes | 9 |
| | Section 9.3. Destruction-Damage – Within Last Five Years | 9 |
| ARTICLE 10 – REMOVAL OF FIXTURES | | 11 |
| ARTICLE 11 – CONDEMNATION | | 12 |
| | Section 11.1. Entire or Substantial Taking | 12 |
| | Section 11.2. Partial Taking | 13 |
| | Section 11.3. Disposition of Proceeds | 13 |
| | Section 11.4. Further Assurance | 14 |
| ARTICLE 12 – INSURANCE | | 14 |
| ARTICLE 13 – GOVERNMENTAL REGULATIONS | | 15 |
| ARTICLE 14 – QUIET ENJOYMENT | | 16 |
| ARTICLE 15 – TAXES | | 16 |
| ARTICLE 16 – OWNERSHIP OF IMPROVEMENTS | | 18 |
| ARTICLE 17 – RENT | | 18 |

-A-

EXHIBIT A

INDEX - cont'd                                          PAGE

ARTICLE 18 - OPTIONS TO EXTEND TERM
                                                          19
ARTICLE 19 - NOTICES
                                                          20
ARTICLE 20 - ARBITRATIONS
                                                          21
ARTICLE 21 - HOLD HARMLESS
                                                          21
ARTICLE 22 - FIRST RIGHT TO PURCHASE
                                                          22
ARTICLE 23 - AGREEMENTS IN WRITING
                                                          23
ARTICLE 24 - ASSIGNEES BOUND
                                                          23
ARTICLE 25 - CAPTIONS AND MARGINAL NOTES
                                                          23
ARTICLE 26 - NO ORAL CHANGES
                                                          24
ARTICLE 27 - SUBORDINATION
                                                          24
ARTICLE 28 - SHORT FORM LEASE
                                                          24
ARTICLE 29 - EFFECT OF CONVEYANCE
                                                          24
ARTICLE 30 - COMMENCEMENT OF TERM
                                                          25
ARTICLE 31 - TERMINATION OF LEASE
                                                          25
ARTICLE 32 - RENTAL ADJUSTMENT
                                                          25
ARTICLE 33 - IMPROVEMENTS AND ALTERATIONS BY TENANT
                                                          26

GROUND LEASE

THIS AGREEMENT, made and entered into this 18
day of JULY_____, 19 77, by and between BANK OF
AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a national
banking association, hereinafter called "Tenant", and
Bank of America National Trust and Savings Association, as Trustee
of the Trust created by Arturo Micheletti by Substituted Declaration of
Trust dated March 13, 1931,
hereinafter called "Landlord",

W I T N E S S E T H:

ARTICLE 1

TERM

Landlord hereby leases to Tenant and Tenant hires
from Landlord those certain premises situated in the City of
San Mateo_____, County of  San Mateo_____, State
of California, more particularly described on Exhibit "A",
attached hereto, together with (a) all buildings and improve-
ments at any time during the term located thereon, whether
constructed by Landlord or Tenant, (b) all building equipment
of every kind and nature on or in said building and improve-
ments, and (c) all and singular the appurtenances, rights and
privileges in anywise pertaining thereto, herein called "the
premises", for a term of  three hundred and sixty_____
( 360 ) calendar months (plus the partial month, if any, im-
mediately following the commencement of the leased term), com-
mencing as provided in Article 30 and expiring on the last day
of the  three hundred and sixtieth_____ ( 360 th)

-1-

full calendar month (the initial portion of the lease term) thereafter, plus the rental for the partial month, if any, payable in advance on the first day of each month in installments as provided in Article 17 hereof.

## ARTICLE 2
### HOLDING OVER

Should Tenant hold over the term hereby granted with the consent of Landlord, the term of this lease shall be deemed to be and shall be extended at the monthly rent then in effect, and otherwise upon the convenants and conditions in this lease contained, until either party serves upon the other thirty (30) days' written notice reciting therein the effective date of cancellation, and upon said date this lease as so extended shall terminate.

## ARTICLE 3
### RIGHT OF INSPECTION

Landlord and the agents and employees of Landlord shall have the right to enter upon said premises at all reasonable times to inspect the same to see that no damage has been or is done and to protect any and all rights of Landlord and to post such reasonable notices as Landlord may desire to protect the rights of Landlord.

## ARTICLE 4
### REMEDIES

Section 4.1. Default. This lease is made upon the

-2-

condition that if default be made in the payment of said rent and such default shall continue for more than ten (10) days after receipt of a written demand by Landlord to Tenant therefor, or if Tenant fails or neglects to perform any of Tenant's other obligations hereunder for a period of twenty (20) days after receipt of written demand by Landlord to Tenant for such performance (provided, however, if the default is of such a character as to require more than twenty (20) days, then if Tenant shall fail to use reasonable diligence in curing such default), or if Tenant shall abandon or vacate said premises, or if the estate hereby created shall be taken on execution, and such execution shall not be cancelled, satisfied or otherwise removed within thirty (30) days after notice by Landlord, or if Tenant shall be adjudicated bankrupt or insolvent according to law, or if any assignment of its property shall be made for the benefit of creditors, then and in any of said events Landlord or the legal representative of Landlord, without notice or demand, may lawfully declare said term ended, and re-enter said premises or any part thereof, either with or without process of law, and expel, remove and put out Tenant or any person or persons occupying said premises, and may remove all personal property therefrom, using such force as may be necessary to repossess and enjoy said premises as before this demise, without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant or condition and without liability to any person for damages sustained by reason of such removal. Upon

-3-

declaration by Landlord as aforesaid that the term herein
provided has ended, no compensation, damage or allowance shall
be made to Tenant for any buildings or additions thereto or
improvements thereon and thereof directed or undertaken or
performed at any time by said Tenant, and all right, title
and interest of Tenant in and to said leased land, premises,
buildings and improvements, whether at law or in equity,
shall immediately cease and terminate, all with the same force
and effect as if this lease had duly expired by efflux of
the full period for which the demised premises are hereunder
leased.

Section 4.2.  Performance by Landlord.  In the
event that Tenant shall fail or neglect to do or perform
any act or thing herein provided by it to be done or performed
for a period of thirty (30) days after written notice from
Landlord specifying the nature of the act or thing to be done
or performed (excluding from said thirty (30) day period the
period during which Tenant shall attempt with diligence and
good faith to do or perform the act or thing which is the sub-
ject of the notice herein in this sentence provided), then
Landlord may perform such act or thing for the account of Ten-
ant and Landlord shall not be or be held liable or in any way
responsible for any loss, inconvenience, annoyance or damage
resulting to Tenant on account thereof, and Tenant shall re-
pay to Landlord upon demand the entire cost and expense there-
of, including compensation to the agents and servants of
Landlord.  Landlord shall have a right of entry upon the leased

-4-

premises through his agents, their representatives, or a receiver who may be appointed by a court for such purposes. Such entry shall not be deemed to, and shall not constitute an eviction, actual or constructive, of Tenant from the demised premises or any part thereof. Any act or thing done by Landlord pursuant to the provisions of this section shall not be or be construed as a waiver of any such default by Tenant, or as a waiver of any covenant, term or condition herein contained or of the performance thereof. All amounts payable by Tenant to Landlord under any of the provisions of this lease, if not paid when the same become due as in this lease provided, shall bear interest from the date the same became due until paid at the rate of _____eight_____ percent (__8__%) per annum, compounded annually.

Section 4.3. <u>Attorneys' Fees</u>. If any action at law or in equity shall be brought to recover any rent under this lease, or for or on account of any breach of or to enforce or interpret any of the covenants, terms or conditions of this lease, or for the recovery of the possession of the leased premises, prevailing party shall be entitled to recover from the other party as part of prevailing party's costs reasonable attorneys' fees, the amounts of which shall be fixed by the court and shall be made a part of any judgment rendered.

Section 4.4. <u>Waiver</u>. One or more waivers of any covenant or condition by Landlord shall not be construed as a waiver of a subsequent breach of the same or any other covenant or condition, and the consent of approval by Landlord

to or of any act by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent or approval to or of any subsequent similar act by Tenant.

ARTICLE 5

USE

Tenant agrees that it will not use the premises for or carry on or permit upon said premises any offensive, noisy or dangerous trade, business, manufacture or occupation or any nuisance or anything against public policy; that the premises shall not be used in whole or in part during the term of this lease for any purpose or use in violation of any of the laws, ordinances, regulations or rules of any public authority at any time applicable thereto.

ARTICLE 6

UTILITIES

Tenant agrees that it will pay for all the fuel, gas, oil, heat, electricity, water, power and sewerage which may be furnished to or used in or about said premises during the term of this lease; and that it will keep the premises free and clear of any lien or encumbrance of any kind whatsoever created by Tenant's acts or omissions.

ARTICLE 7

CARE AND MAINTENANCE

Tenant shall keep and maintain, or cause to be

-6-

kept and maintained, all buildings, improvements and appur-
tenances, including, without limitation, sidewalks and drive-
ways, which may at any time during the lease term be located
upon the leased land in good condition and repair and in a
clean, attractive and sanitary condition, reasonable wear and
use, damage from casualties (except as otherwise provided in
Articles 9 and 11) excepted.

ARTICLE 8

ASSIGNMENT and SUBLETTING

Section 8.1. Assignment.  It is hereby covenanted
and agreed by and between the parties hereto that Tenant may,
subject to the conditions hereinafter set forth, assign its
interest in and to this lease in the manner hereafter provided,
upon condition that at the date of assignment Tenant shall
not then be in default of any of the covenants and conditions
herein contained to be kept, observed and performed by Tenant,
and provided also that such assignment by Tenant shall be
evidenced by an instrument in writing, duly executed and ac-
knowledged by both Tenant and the assignee before a notary
public or other officer authorized by law to take acknowledg-
ments and duly recorded in the Recorder's Office of the County
of   San Mateo   , wherein and whereby such assignee shall
expressly accept and assume all of the terms, covenants and
conditions in this lease contained to be kept, observed and
performed by Tenant, and shall become bound to comply there-
with, and an executed original of such instrument of assignment

-7-

shall be delivered to Landlord wherein shall also appear the specific place of business or residence of the said assignee. The Tenant further covenants and agrees that it will not make any assignment of this lease, except in the manner and upon the conditions set forth herein, and it is agreed by and between the parties hereto that any assignment by Tenant of its interest in and to this lease without complying with the covenants and conditions aforesaid shall be null and void.

Tenant shall remain liable hereunder for the full and complete performance of all the terms, covenants and conditions hereof, notwithstanding any such assignment of the within lease and the assumption of liability of any assignee.

Each assignment that may be made shall specifically provide that Landlord may modify or alter this lease or the terms thereof in any particular and extend any indulgence he may see fit to such assignee, without in anywise relieving the Tenant of any obligation to respond to Landlord for any breach of covenants or conditions of this lease as so amended, or altered; provided, further, however, that no amendment or alteration of this lease shall enlarge or extend the liability of Tenant.

Section 8.2.  Subletting.  It is further mutually agreed between the parties hereto that Tenant may sublet all or any part of any building and/or improvements upon the land hereunder demised for any period or periods within the term hereby demised, provided that the lease or leases under which

subleasing shall be made are subject to all of the covenants,
agreements and conditions of this lease, and provided further,
that upon the termination of this lease such subleases shall
*ipso facto* be terminated, provided also, that the receipt by
Landlord from any subtenant or subtenants of Tenant of any
rent due to Tenant be received and applied by Landlord toward
the payment of the rent hereby reserved shall not be taken
and construed as a release of Tenant from any of its liabi-
lities undertaking the covenants and agreements hereunder,
except to the extend of the moneys so received by said Land-
lord.

Any sublease by Tenant shall be evi-
denced by an instrument in writing, a short form of which,
suitable for recording, shall be duly executed and acknow-
ledged by both Tenant and the sublessee before a notary pub-
lic or other officer authorized by law to take acknowledgments
and duly recorced in the Recorder's Office of the County of
San Mateo          .   Any such sublease shall provide that
such sublessee shall expressly agree to take said sublease
subject to all of the terms, covenants and conditions in
this lease contained to be kept, observed and performed by
said sublessee.  A conformed copy of such instrument of sub-
lease and the short form thereof shall be delivered to Land-
lord, in which sublease shall also appear the specific place
of business or residence of said sublessee.

ARTICLE 9

DESTRUCTION

Section  9.1. Destruction-Damage - Fire Insurance.

-9-

If any buildings or improvements on the premises are partially or totally destroyed or damaged by a risk against which insurance with a licensed insurance company under a normal special form fire insurance policy with an extended coverage endorsement attached ,in an amount of not less than eighty percent (80%) of its full insurable value, excluding foundations and excavations would cover, except to the extent hereinafter provided, Tenant shall restore, or cause to be restored, such damage or destruction; provided, however, Tenant may, at its sole option, remove such damaged or destroyed building or buildings and replace it or them with another building or buildings as in its sole option may elect; provided, said building is comparable in value to that which is being replaced. Any insurance proceeds available, whether from Tenant's self-insurance plan or otherwise, shall be the property of Tenant, and Landlord shall have no interest therein.

Section 9.2. <u>Destruction-Damage</u> - <u>Other Causes.</u>
In the event the building or buildings on the demised premises shall be partially or totally damaged or destroyed from any cause whatsoever, this lease shall be unaffected and the rights or obligations of Tenant shall not be affected thereby (except as otherwise provided in Section 9.3 hereof), except that Landlord or Tenant may, at the option of either party, elect to terminate this lease by notice to the other within ninety (90) days after the occurrence of any such damage or destruction if Tenant is not obligated to or does not elect to repair such damage or place another building or buildings

-10-

on the demised premises pursuant to the provisions of Section 9.1 hereof.

Section 9.3.  Destruction-Damage - Within Last Five Years of Term.  In the event the building and/or improvements on the premises are damaged or destroyed (i) within the last five (5) years of the then existing term of this lease, or any extended term thereof, and (ii) to such an extent that restoration in the original form or construction of new improvements is not economically feasible in the opinion of Tenant, this lease may be terminated at Tenant's option by notice served upon Landlord within ninety (90) days following any such damage or destruction, and such damage or destruction is covered under Tenant's self-insurance plan, Tenant shall pay to Landlord the amount, if any, which an insurance company would have paid as a result of said loss, damage or destruction if Tenant had secured a fire insurance policy with an extended ~~risk~~ coverage endorsement attached insuring the building and improvements against the perils covered by said policy and endorsement to the extent of not less than eighty percent (80%) of the full fair insurable value thereof.



ARTICLE 10

REMOVAL OF FIXTURES

It is agreed that at the expiration or sooner termination of this lease term, or of any renewal or extension thereof, Tenant  may  remove all, any or any part of the fixtures, vault doors, safe-deposit boxes, walk-up windows, drive-up windows, and all other trade fixtures placed in said premises by Tenant

-11-

under the terms hereof or under the terms of any former tenancy, and for the purpose of this section all such enumerated items and other trade fixtures placed in said premises by Tenant shall not be deemed alterations, additions or improvements to the premises, but it is agreed that, upon the expiration or sooner termination of the lease term, or any extension or renewal thereof, Tenant shall not be required to remove such fixtures or any part thereof placed in said premises by Tenant unless it elects to do so.  In the event Tenant shall remove any such fixtures as herein provided, Tenant shall repair any damage to the premises occasioned thereby.

## ARTICLE 11

### CONDEMANTION

Section 11.1.  Entire or Substantial Taking.  If title to all of the premises or so much thereof be taken for any public or quasi-public use under any statute or by right of eminent domain, or by private purchase in lieu thereof, so that a reasonable amount of reconstruction of the premises and any building or improvements thereon will not result in the premises and the building or improvements thereon being a practical improvement and reasonably suitable for Tenant's continued occupancy for the uses and purposes for which the premises are leased, this lease shall terminate as of the date that possession of said premises, or any part thereof, be taken and rent and other charges shall be adjusted as of such date.

Section 11.2.  Partial Taking.  If any part of the premises shall be so taken, including any portion of any building or improvements thereon, and the remaining part thereof (after reconstruction of the then existing building in which the premises are located) is reasonably suitable for Tenant's continued occupancy for the purposes and uses for which the premises are leased, this lease shall, as to the part so taken, terminate as of the date that possession of such part of said premises be so taken and the rent shall be reduced in the same proportion that the land area taken bears to the original land area demised, and Tenant shall, at its own cost and expense, make all necessary repairs or alterations to the building and improvements situated thereon so as to constitute the portion of the building and improvements not taken as a complete architectural unit.

Section 11.3.  Disposition of Proceeds.  There shall be a joint award or settlement made to and with Landlord and Tenant for such part of the premises so taken, and any sums legally recoverable are to be paid therefor, including damage to the leasehold interest, if any, the fee and the remainder.  The proceeds of such joint award, settlement or compensation (or any separate awards, settlements or compensation made in lieu thereof), which sums so legally recoverable are paid, shall be distributed as follows:  (i)  the amount required for the restoration or rehabilitation of any building or improvements (in the event of a partial taking and the continuance of this lease as to the premises not so taken) shall be paid to Tenant to be used solely for that

-13-

purpose, (ii) such portion of said proceeds as shall represent Tenant's depreciated cost of the improvements or building made or erected on the premises by Tenant shall be paid to Tenant. The term "depreciated cost" within the meaning of this section means the amount which is the then Tenant's adjusted cost basis of said building and improvements should Tenant depreciate said building and improvements over the then remaining term of this lease including the option periods; provided, that said residue shall be an amount not less than the value of the land leased hereunder if taken in its entirety by right of eminent domain, or in the event that part of said leased land is taken, then the value of such part plus the damages, if any, caused to the remaining portion shall be the amount included in said residue; it being understood that said value and said damages shall be determined and ascertained as of the date of said taking by right of eminent domain and shall be determined and fixed in said eminent domain proceedings and shall in no event include the value of any improvements on said land leased; (iii) the residue of said proceeds shall belong to and be paid over to Landlord on his proper share of said award, settlement or compensation.

Section 11.4.  Further Assurance.  Each party agrees to execute and deliver to the other all instructions that may be required to effectuate the provisions hereof.

ARTICLE 12

INSURANCE

Tenant agrees that it will at all times and at its

-14-

own expense during the term or extended term of this lease main-
tain in force a policy or policies of comprehensive liability
insurance, including property damage, written by one or more
responsible insurance carriers which will insure Tenant and
Landlord against liability for injury to persons and/or prop-
erty and death of any person or persons occurring in or about
the premises.  Liability under such insurance shall not be less
than TWO HUNDRED THOUSAND DOLLARS ($200,000.00) for any one (1)
person injured or killed and not less than FIVE HUNDRED THOUSAND
DOLLARS ($500,000.00) for any one (1) accident.  The insurance
provided for in this section may be a general policy or poli-
cies covering all of Tenant's properties.

ARTICLE 13

GOVERNMENTAL REGULATIONS

Tenant shall promptly observe and comply with all
laws, orders, regulations, rules, ordinances and require-
ments of the federal, state, county and city governments and
of all other governmental authorities, affecting the leased
premises or appurtenances or any part thereof, and of all
their departments, bureaus or officials, whether such laws
orders, regulations, rules or ordinances relate to alterations
or requirements or repairs, either inside or outside, extra-
ordinary or ordinary, to or in and about the leased premises,
or any building thereon, or in any vaults, passageways, fran-
chises or privileges appurtenant thereto or connected with the
enjoyment thereof, or to changes or requirements incident to
or as a result of any use or occupation thereof, or otherwise,
and whether the same are in force at the commencement of the

15-

lease term or may in the future be passed, enacted or directed, and Tenant shall pay all costs, expenses, claims, fines, penalties and damages that may in any manner arise out of or be imposed because of failure of Tenant to comply with the provisions of this section.

## ARTICLE 14

### QUIET ENJOYMENT

Landlord covenants that there are not now any restrictive covenants, zoning or other ordinances, regulations or easements which will prevent Tenant from conducting its usual business or any department thereof in the premises or which will prevent the construction, alteration or remodeling of the premises to meet the needs of Tenant; and that if any such restrictive covenant, zoning or other ordinance, regulation, or easement is hereafter enacted or found to exist prior to the time that such construction, alteration or remodeling is completed, then Tenant may, at its option, terminate this lease.

## ARTICLE 15

### TAXES

Tenant will pay before delinquency all taxes and assessments levied or assessed against any trade fixtures, equipment or personal property placed or kept by it upon the demised premises.

Tenant also agrees to pay before delinquency, as additional rent, all real property taxes and assessments

-16-

which are levied or assessed against the demised premises and/or the improvements thereon during the term of this lease or any renewal thereof.

It is agreed benefit may be taken of the provisions of any statute or ordinance permitting such taxes and assessments to be paid over a period of time and Tenant shall be obligated to pay only the installments of such taxes and assessments which are attributable to the term of this lease. All real property taxes and assessments for the years in which this lease commences and terminates shall be apportioned between Landlord and Tenant on a daily basis.

If the demised premises are separately assessed, Tenant will furnish to Landlord upon request evidence of the payment prior to delinquency of said taxes and assessments herein agreed to be paid by Tenant.

If it shall so desire, Tenant may at any time contest the validity of any assessment, tax or levy. In this event, Landlord will offer no objection and at the request of Tenant, but without expense to Landlord, will cooperate with Tenant in such contest. Tenant hereby agrees to indemnify and save Landlord harmless against any and all loss, cost or expense of any kind in connection therewith.

Nothing herein contained shall be construed to require the Tenant to pay any franchise, estate, inheritance, succession, capital levy, or transfer tax of the Landlord growing out of or connected with this lease or the Landlord's rights in the demised premises or any income, excess profits or revenue tax, or any other tax, assessment, rate or charge

upon the rentals payable by the Tenant under this lease. If the Tenant shall be required by law to pay any such tax, assessment, rate or charge specified in this paragraph, the Tenant shall have the right to deduct the amount thereof from subsequent installments of rent due from the Tenant under the terms of this lease.

## ARTICLE 16
### OWNERSHIP OF IMPROVEMENTS

The parties hereto agree that irrespective of the fact that the property hereunder demised is improved, the rental hereunder reserved is a ground rental and, except as otherwise herein provided in Article 9, Landlord shall at all times be entitled to receive said rental in full, irrespective of the tearing down or demolition of, or any injury or damage to, or the destruction of any present and existing building and/or improvements or of any future building and/or improvements or the lapse of any time required for the reconstruction or replacement of any thereof.

Any building hereafter constructed upon the demised land in consonance with any of the provisions of this lease shall become the property of and be surrendered to Landlord upon expiration of the leased term; and Tenant shall have no obligation to remove any such improvements or building at the expiration of the lease term.

## ARTICLE 17
### RENT

Tenant shall pay Landlord monthly in advance on the

-18-

first day of each and every month ___Two Thousand and no/100___

DOLLARS ($ _2000.00___ ) per month for each month of the first five (5) year period of the initial lease term, rental for partial months being prorated. Rent shall be adjusted at 5 year intervals thereafter as provided in Article 32 herein.

ARTICLE 18

OPTIONS TO EXTEND TERM

Tenant shall have the following options to extend the term of this lease under the same terms, covenants and conditions hereof, except as to rental.  Landlord grants Tenant four (4) successive five (5) year options to extend this agreement under the same terms and conditions herein provided.

Each such option shall be exercised by Tenant giving to Landlord a notice that it is exercising the same at least six (6) months prior to the date upon which this lease, or as it may have been extended, would terminate if such option were not exercised.  The rent to be paid for each such extended term or terms shall be adjusted as provided in Article 32 herein.



ARTICLE 19

<u>NOTICES</u>

All notices, statements, demands, requests, consents, approvals, authorizations, offers, agreements, appointments, designations, or refusals hereunder by either party to the other shall be in writing and shall either be personally served upon the other party or sent by United States register-ed mail, return receipt requested, postage prepaid. If sent by mail, the same shall be addressed to Landlord or Tenant, as the case may be, at the following addresses, or to such address as the parties hereto shall designate from time to time:

Landlord:    Bank of America N. T. & S. A.
             Trust Department
             400 El Camino Real
             P. O. Box 1991
             San Mateo, CA  94402

Tenant:      Bank of America N. T. & S. A.
             c/o Continental Service Company
             260 Fifth Street
             San Francisco, California 94103.

-20-

ARTICLE 20

ARBITRATION

Any question, dispute, controversy or misunderstanding arising under any provision of this lease shall be settled by arbitration.    The party asking for arbitration shall request arbitration through the American Arbitration Association and the decision of that association shall be binding unto the parties hereto.    The expense of the arbitration shall be borne as the American Arbitration Association directs.

ARTICLE 21

HOLD HARMLESS

Tenant covenants and agrees that Landlord shall not at any time or to any extent whatsoever be liable, responsible, or in anywise accountable for any loss, injury, death or damage to persons or property which at any time during the term of this lease may be suffered or sustained by Tenant or by any person, who may at any time during the term of this lease be using or occupying or visiting the leased premises or be in, on or about the same, whether such loss, injury, death or damage shall be caused by or in anywise result from or arise out of any act, omission or negligence of Tenant or of any occupant, subtenant, visitor, or user of any portion of the leased premises, or shall result from or be caused by any other matter or thing, whether of the same kind as or of a different kind than the matters or things above set forth, and Tenant shall

-21-

forever indemnify, defend, hold and save Landlord free and harmless of, from and against any and all claims, liability, loss or damage whatsoever on account of any such loss, injury, death or damage.   Tenant hereby waives all claims against Landlord for damages to property in, upon or about the premises, from any cause arising at any time during the term of this lease; provided, however, that the foregoing waiver in this sentence contained shall not apply in the event such damage to property or such injuries to persons in, upon or about the premises shall be caused by the negligent acts or omission of Landlord, its agents or employees.

## ARTICLE 22

## FIRST RIGHT TO PURCHASE

If at any time during the term of this lease, or any extension or renewal thereof, Landlord elects to sell or offers for sale the demised premises, Landlord shall notify Tenant in writing of its intention so to do, and thereafter Tenant shall be allowed a period of sixty (60) working days within which to negotiate for the purchase of said property. In the event Landlord and Tenant fail to agree upon the purchase of said premises within said period of time, and thereafter Landlord sells the property, such sale shall be consummated subject to Tenant's rights under the terms of this lease, or any extension or renewal thereof (including, but not limited to Tenant's renewal rights).

-22-

ARTICLE 23

AGREEMENTS IN WRITING

There are no oral agreements or understandings between the parties hereto affecting this lease, and this lease supersedes and cancels any and all previous oral and written negotiations, arrangements, agreements and understandings (including that certain lease dated June 22, 1959 for the premises known as 240-250 Main Street in San Mateo, California) between the parties hereto with respect to the subject matters thereof, and none thereof shall be used to interpret or construe this lease.

ARTICLE 24

ASSIGNEES BOUND

Subject to the provisions of this lease with respect to assignment by Tenant, the covenants, conditions and provisions contained herein shall be binding upon and inure to the benefit of Landlord, its successors and assigns, and Tenant, its successors and assigns.

ARTICLE 25

CAPTIONS AND MARGINAL NOTES

The captions, headings and marginal notes throughout this lease are for convenience and reference only and the words contained therein shall in no way be held or deemed to define, limit, describe, explain, modify, amplify or add to the interpretation, construction or meaning of any provision of or the scope or intent of this lease nor in any way affect this lease.

ARTICLE 26

NO ORAL CHANGES

This lease may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

ARTICLE 27

SUBORDINATION

Landlord agrees that any mortgage, deed of trust, or any instruments of security which have been or shall be placed on the land or buildings, or land and buildings of which the premises form a part, as well as all renewals or extensions thereof, shall be subordinate to this lease and to the interests of Tenant thereunder.

ARTICLE 28

SHORT FORM LEASE

The parties agree to execute this lease, or at Tenant's election, a short form thereof, in a manner so that it may be recorded in the office of the County Recorder.

ARTICLE 29

EFFECT OF CONVEYANCE

In the event of a sale or  conveyance by Landlord

-24-

to any one person, firm, association or corporation, the entire interest of such conveyor, transferor, or assignor of the real property demised, shall be deemed to have been conveyed, transferred and assigned, if there is delivered to Tenant an original of a valid, binding and sufficient agreement in writing executed and acknowledged by such conveyee, transferee or assignee and directly enforceable by Tenant whereby such conveyee, transferee or assignee assumes and agrees to perform all of the covenants, provisions and conditions of this lease remaining on the part of the conveyor, transferor or assignor to be performed, then and in such event the conveyor, transferor or assignor shall be released from any and all liability arising or accruing under this lease after the date of such conveyance, transfer or assignment.

## ARTICLE 30

### COMMENCEMENT OF TERM

This lease shall commence on August 1, 1977, or the beginning of the first calendar month after approval by Bank of America Senior Management, whichever date occurs later. In the event that said approval is not obtained, this lease shall terminate and the parties hereto are relieved of any and all obligations hereunder.

## ARTICLE 31

### TERMINATION OF LEASE

In the event that Tenant is unable to obtain all necessary governmental approvals to make all such improvements on the leased premises as Tenant deems necessary for the conduct of its business, Tenant shall have the option to terminate this lease by giving the Landlord notice within thirty (30) days after Tenant has been denied such approvals.

## ARTICLE 32

### RENTAL ADJUSTMENT

The rent payable by Tenant to Landlord shall be adjusted at five (5) year intervals, during the initial term of this lease, and any extension hereof pursurant to Article 18 hereof, as herein provided.

Commencing on the date five (5) years after rent commences under this Lease, and periodically every 5 years thereafter, the rental as provided in Paragraph 17 of this lease, shall be adjusted using an adjustment factor based on the change in the cost of living index as defined hereinbelow. The index for  each such 5 year period shall be the

-25-

quotient of a fraction in which the numerator is the cost of living index for the month six (6) months prior to the beginning of such 5 year period, and the denominator is the cost of living index of the month rent commenced under this Lease. The adjustment factor for each such 5 year period shall be the cumulative total of 100% of any increase from 0% to 35% in the cost of living index during the previous period, 75% of any increase from 35% to 75%, 50% of any increase from 75% to 150% and 25% of any increase over 150%. The total monthly rent for each such 5 year period shall be the total monthly rent of the previous 5 year period multiplied by the adjustment factor. For instance, the adjustment factor for a 40% increase in the cost of living index over five (5) years would be 1.00 (1 + .35) + .75 (.05) = 1.385. In no event shall the total monthly rent go below $2000.

The cost of living index to be used for the determination of the adjusted monthly rent as provided for above shall be the United States Consumer Price Index, for all items (1967 equals 100), published by the Bureau of Labor Statistics of the U.S. Department of Labor. If for any reason whatsoever there is any change in the method of calculation or formulation of said price index, or if that index shall no longer be published, then another index generally recognized as authoritative shall be substituted by agreement. In any event, the base used by any new index, shall be reconciled to the 1967 index.

ARTICLE 33

<u>IMPROVEMENTS AND ALTERATIONS BY TENANT</u>

Tenant shall be allowed to demolish existing improvements, to construct new improvements, and to make and perform such interior alterations and remodeling, at Tenant's expense, as Tenant deems necessary for the conduct of its business. It is agreed that at the expiration of the term of this lease, or of any renewal or renewals, extension or extensions thereof, that Tenant shall construct a demising wall, at its expense, on the premises to separate any improvements constructed at Tenant's expense, on the said premises from any

-26-

improvements constructed and alterations made and performed on the adjacent Tenant-owned property. All other restoration work required, or work necessary to condition said premises for tenancy shall be at the expense of the Landlord. Notwithstanding the provisions of this Article, Tenant shall not be obligated to construct said demising wall if Tenant elects to terminate this lease in accordance with the provisions of Article 9.2 and 9.3.

Tenant shall be allowed to install, replace, and repair such building mounted signing, business identification symbols and flag-poles as Tenant believes necessary for the conduct of its business.

IN WITNESS WHEREOF, the parties hereto have executed this lease on the day and year first above written.

Bank of America National Trust
and Savings Association, as Trustee
of the Trust Created by Arturo
Micheletti by Substituted Declaration
of Trust dated March 13, 1931.

BANK OF AMERICA NATIONAL TRUST

AND SAVINGS ASSOCIATION

BY _____
    L. P. Johnston
    Vice President

BY _____
    ASSISTANT VICE PRESIDENT

BY _____
    D. R. Decherd
    Trust Officer

BY _____
    VICE PRESIDENT

             LANDLORD

             TENANT

- 27 -

AUG 1 1987

## AMENDMENT TO SHORT FORM LEASE

THIS AMENDMENT, made this 21st day of April , 1978, by and between BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a national banking association, ("Tenant"), and Bank of America National Trust and Savings Association, as Trustee of the Trust created by Arturo Micheletti by Substituted Declaration of Trust dated March 13, 1931, ("Landlord"),

## W I T N E S S E T H:

Landlord and Tenant entered into a Lease for premises located in the City of San Mateo, County of San Mateo and State of California, for a term commencing October 1, 1977 and terminating September 30, 2007, subject to that unrecorded Lease between the parties, dated July 18, 1977. A Short Form Lease, dated December 16, 1977, between said parties, was recorded as Doc. 38899AM Reel 7723 Pages 667, 668, 669, and 670 in the Official Records of San Mateo County, California on March 7, 1978.

Landlord and Tenant now wish to amend the Short Form Lease, dated December 16, 1977, to include the following provision, as specified in the unrecorded Lease between the parties:

ALTERATIONS: Tenant shall be allowed to demolish existing improvements, to construct new improvements, and to make and perform such interior alterations and remodelling, at Tenant's expense, as Tenant deems necessary for the conduct of its business. It is agreed that at the expiration of the term of this lease, or of any renewal or renewals, extension or extensions thereof, that Tenant shall construct a demising wall, at its own expense, on the premises to separate any improvements constructed at Tenant's expense on the said premises from any improvements constructed and alterations made and performed on the adjacent Tenant owned property.

IN WITNESS WHEREOF, the parties hereto have executed this instrument the day and year first hereinabove written.

BANK OF AMERICA NATIONAL TRUST
AND SAVINGS ASSOCIATION

By _____
Vice President

BANK OF AMERICA NATIONAL TRUST
AND SAVINGS ASSOCIATION,
as Trustee of the Trust created
by Arturo Micheletti by Substituted
Declaration of Trust dated March 13,
1931

OF CALIFORNIA ) ss.
Y OF SAN MATEO )

On the 25th day of April , 19 78 , before me, Margaret Hogan ary Public in and for said County and State, personally appeared D. R. Decherd to me to be the Trust Officer , and John Beatty , known to me to, e Sr. Property Management Officer of the Bank of America National Trust and Savings iation, a national banking association, that they executed the foregoing instrument as uatee of the Trust of Arturo Micheletti VIF 245-0 , sed, and known to me to be the persons who executed the same on behalf of said national g association therein named, and acknowledged to me that such national banking ation therein named executed the same as Trustee .

WITNESS MY HAND AND OFFICIAL SEAL,

OFFICIAL SEAL
MARGARET M. HOGAN
NOTARY PUBLIC - CALIFORNIA
SAN MATEO COUNTY
My comm. expires JAN 8, 1980

Margaret M. Hogan
Notary Public in and for the County
of San Mateo, State of California

My Commission expires Jan 8, 1980

8150-8

**Exhibit B**

1  | JAMES M. WAGSTAFFE (95535)
2  | ADRIAN J. SAWYER (203712)
   | **KERR & WAGSTAFFE LLP**
   | 100 Spear Street, Suite 1800
3  | San Francisco, CA 94105–1528
   | Telephone: (415) 371-8500
4  | Fax: (415) 371-0500
   | Email: sawyer@kerrwagstaffe.com

CASE MANAGEMENT CONFERENCE SET

ENDORSED
F I L E D
San Francisco County Superior Court

JUL 1 6 2008

GORDON PARK-LI, Clerk

BY: _____
Deputy Clerk

Attorneys for Plaintiff
ART MICHELETTI

DEC 1 9 2008 -9:00 AM

P. NATT

DEPARTMENT 212

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| ART MICHELETTI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., a national banking association, LARRY P. JOHNSTON, an individual, and DOES 1-10,<br><br>Defendants. | Case No. CGC-08-477 590<br>**COMPLAINT:**<br><br>**(1) BREACH OF FIDUCIARY DUTY**<br><br>**(2) IMPOSITION OF CONSTRUCTIVE TRUST AND ACCOUNTING**<br><br>**(3) WASTE**<br><br>**(4) CONSTRUCTIVE FRAUD**<br><br>**(5) NEGLIGENCE**<br><br>**(6) CONVERSION**<br><br><u>**JURY TRIAL DEMANDED**</u> |

KERR
&
WAGSTAFFE
LLP

EXHIBIT B

COMPLAINT

1

**SUMMARY OF CLAIM**

2          1.      This is an action involving over thirty years' worth of self-dealing by Bank of

3    America ("BofA"), culminating in events which are only now unfolding.  Since 1929, BofA

4    served as the trustee of a trust created by Art Micheletti's now-deceased father, managing (or,

5    more accurately, mismanaging) real estate in the Bay Area for the trust.  After years of

6    mismanaging the property, and on the eve of the death of the settlor's wife—an event that would

7    terminate the trust under its terms—BofA took the opportunity to lock up trust property in a

8    below market 30-year lease **to itself** with an option to renew for 20 years more thereafter.  BofA

9    wanted this particular property because BofA owned the property next door.

10         2.      Not surprisingly, BofA negotiated very good terms with itself.  BofA paid the

11   trust below market rent that did not even fully track CPI increases, occupying a large portion of

12   the building and subleasing the rest.  And BofA allowed itself to do whatever it wanted with the

13   building, subject only to the obligation to put up a demising wall between its property next door

14   and the leased property upon termination of the lease.  As a fiduciary who locked up a trust asset

15   in a long-term obligation that exceeded the terms of the trust and was entered into for BofA's

16   own benefit, BofA had a continuing fiduciary duty with respect to the property that continued for

17   the duration of the lease.

18         3.      When the trust terminated shortly after BofA entered into this self-dealing lease,

19   BofA remained in possession of the building, acting as the owner for all intents and purposes,

20   remodeling without telling the Micheletti family, and purporting to manage the property for their

21   benefit.  Thus did BofA continue in a fiduciary capacity with respect to the property.

22         4.      Thirty years have passed, and BofA is ready to wash its hands of the building.  It

23   has benefited from a below-market rent for years, has damaged the property, and has now

24   returned possession of the damaged building to Plaintiff and the Micheletti family.  This action

25   seeks to remedy BofA's breach of trust and waste of the property.

26

**VENUE**

27         5.      Venue is proper in this County because a substantial part of the events giving rise

28   to the claim occurred in this County.  On information and belief, the lease that gives rise to the

KERR
&
AGSTAFFE
LLP

1    breaches of fiduciary duty alleged herein was signed and approved by BofA in San Francisco,

2    and the trust at issue encompassed property located in San Francisco County. In addition, at the

3    time that lease was negotiated, BofA's headquarters were in San Francisco, and even now,

4    BofA's principal place of business in California is located in San Francisco.

5                                    **PARTIES**

6        6.    Plaintiff Art Micheletti, an individual, resides in Santa Clara County, California

7    and is a beneficiary of the Arturo Micheletti Trust.

8        7.    Defendant Bank of America, N.A., is the successor in interest to Bank of

9    America, N.T. & S.A., the trustee of the Arturo Micheletti Trust, and the past landlord and

10   current tenant and sublessor of the property in San Mateo.

11       8.    Defendant Larry P. Johnston is a former Vice President and trust officer of Bank

12   of America. On information and belief, Johnston is a California citizen and resides in San Mateo

13   County, California.

14       9.    The true names and capacities, whether individual, corporate, associate or

15   otherwise, of defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore

16   sues said defendants by such fictitious names pursuant to California Code of Civil Procedure

17   section 474. Plaintiff further alleges that each of said fictitious defendants is in some manner

18   responsible for the acts and occurrences herein set forth. Plaintiff will amend this complaint to

19   show these defendants' true names and capacities when the same are ascertained, as well as the

20   manner in which each fictitious defendant is responsible.

21       10.   Plaintiff is informed and believes, and upon such basis allege, that at all times

22   herein mentioned, each of the defendants herein was an agent, servant, employee, co-conspirator,

23   partner, joint venturer, wholly owned and controlled subsidiary, and/or alter ego of each of the

24   remaining defendants, and was at all times acting within the course and scope of said agency,

25   service, employment, conspiracy, partnership and/or joint venture.

26

27

28

1

## FACTUAL ALLEGATIONS

2    **Overview Of The Trust**

3        11.    In 1931, Arturo Micheletti, as trustor, executed a Substituted Declaration of Trust

4    whereby he created the Arturo Micheletti Trust (the "Trust"). BofA was the trustee of the Trust.

5    Arturo Micheletti chose BofA because he had a close personal friendship with A.P. Gianinni, the

6    founder of BofA. Plaintiff Art Micheletti's middle name, Amadeo, was chosen in honor of A.P.

7    Gianinni, whose first name was also Amadeo. As a result, Arturo Micheletti had every reason to

8    believe that BofA would do the right thing by his family, the beneficiaries of the Trust. As

9    explained below, by 1977, long after Arturo Micheletti and A.P. Gianinni had passed away,

10    BofA was doing anything but the right thing by the beneficiaries.

11        12.    In 1940, Arturo Micheletti executed a First Amendment to Substituted

12    Declaration of Trust (the "Trust Document"). BofA remained the trustee. The Trust Document

13    provided that the trust corpus consisted of real property situated in San Francisco and San Mateo

14    Counties. Among the real property that made up the trust corpus was a parcel in San Mateo

15    located on B Street (the "B Street Property").

16        13.    Arturo Micheletti, the trustor, died in September 1940, shortly after executing the

17    Trust Document.

18        14.    The Trust Document provided that, after the trustor's death, the trust became

19    irrevocable. The Trust Document further provided that thereafter BofA was to make monthly

20    distributions to Teresa Micheletti, the trustor's wife and Plaintiff Art Micheletti's mother, and to

21    Plaintiff Art Micheletti and his brother, until the termination of the Trust.

22        15.    The Trust Document further provided that that Trust would terminate upon the

23    death of Teresa Micheletti, if Plaintiff Art Micheletti and his brother were over 25 at the time.

24        16.    Upon termination, the principal of the trust estate and "any undistributed income"

25    on that principal was to go in equal shares to Art and his brother.

26        17.    In 1980, Teresa Micheletti died. The Trust nominally terminated. Under this

27    nominal termination, the B Street Property went to Art in its entirety.

28

KERR
&
AGSTAFFE
LLP

18.     Subsequent to the nominal termination of the trust, Plaintiff Art Micheletti deeded the B Street Property to himself and his wife as community property in 1982.  Then, in 1993, the B Street Property was transferred to a trust set up by Plaintiff Art Micheletti and his wife, the Arthur J. Micheletti and Janice M. Micheletti 1993 Inter Vivos Trust ("1993 Trust").  Finally, in 1994, the B Street Property was deeded to Plaintiff Art Micheletti and his wife as general partners of the Micheletti Family Partnership.  The 1993 Trust and the Micheletti Family Partnership have assigned their claims against Defendants to Art Micheletti, Plaintiff herein.

**On The Eve of Trust Termination, BofA Enters Into A Self-Dealing Lease**

19.     The Trust Document gave the trustee the "absolute discretion to lease for terms within or extending beyond the duration of the trust . . . for such consideration . . . as the trustee shall in its absolute discretion deem for the best interests of the trust . . . ."

20.     As the emphasized language makes clear, this discretion was supposed to be exercised in the best interests of the trust.  BofA, however, in violation of its fiduciary duty, leased the B Street Property to itself on very favorable terms, in a long-term lease that would undoubtedly extend beyond the term of the trust, as described next.

21.     In 1977, when Teresa Micheletti was 83 years old and in poor health, BofA, the trustee entered into a ground lease with BofA whereby BofA leased the trust property for 30 years.  As it was virtually certain that Teresa Micheletti would not live another 30 years, BofA knew when it entered into the ground lease that the lease would outlast the Trust.

22.     BofA was keen to get its hands on the property, as the B Street Property was adjacent to a BofA branch in San Mateo.  BofA believed it could expand its operations in that branch via a sweetheart deal, that it would negotiate with itself, that would let it have the run of the B Street Property.  Indeed, the year after signing the lease, BofA made a favorable lot-line adjustment to 255 South B Street for no apparent reason.

23.     The 1977 lease was enormously favorable to BofA.  First, it provided that BofA would pay only $2000 per month for the entire B Street Property, which at the time consisted of 5 rentable units.  This monthly rent would only adjust every 5 years, and that adjustment was designed not even to keep pace with the consumer price index, let alone market rents in the area.

KERR
&
AGSTAFFE
LLP

- 4 -
COMPLAINT

1  $2000 per month was at the time below-market rent for the B Street Property, and market rent in

2  the Bay Area and for the B Street Property has continually increased at a rate exceeding that of

3  the CPI since 1977.

4    24.    The gap between market rent for the entire B Street Property and the rent BofA

5  paid to the Trust under the lease of that property grew quickly. Indeed, by 1982, the rent for one

6  of the smaller units of the B Street Property was already $675 per month, or less than one third of

7  the rent BofA was paying the Trust for the entire building. And, while that unit was only

8  approximately 1,000 square feet, BofA was occupying over 5,000 square feet of the B Street

9  Property for itself, and paying only $2,000 per month to the Trust.

10    25.    The simple fact is that Defendants made no effort to establish what a fair rental

11  value would be, despite their fiduciary duties to the beneficiaries of the Trust. Defendants

12  further intentionally concealed that BofA would pay the trust below-market rent. In fact,

13  Defendants failed to discuss the rental amount with any beneficiary of the Trust, preferring

14  instead to engage in cozy internal negotiations.

15    26.    The truth about BofA's below market rent arrangement and other misconduct

16  only came out in 2007, as BofA was preparing to vacate the premises and Plaintiff was in the

17  process of finding new tenants.

18    27.    Defendants' disregard of their fiduciary obligations did not end with including a

19  term that allowed it to pay below-market rent to the Trust. Defendants went further, and inserted

20  clauses in the lease allowing BofA to do anything it wanted to the B Street Property, up to and

21  including demolishing the structures on the B Street Property entirely, provided that at the end of

22  the lease, BofA put up a demising wall to separate its property (which was adjacent to the B

23  Street Property) from the B Street Property. In short, BofA was allowed to demolish

24  improvements, construct new improvements and remodel without limits.

25    28.    In addition, the lease omitted terms that would have protected the Trust and are a

26  standard part of any lease. There was no obligation on BofA's part to return the B Street

27  Property to the same financial and/or physical condition at its own expense at termination of the

28  lease, and there was no protection at the termination of tenancy from waste, misuse or

KERR
&
AGSTAFFE
LLP

1   destruction by BofA.  As explained above, Defendants allowed BofA considerable liberty to do

2   just the opposite.

3       29.     The lease also contained boilerplate terms that were helpful to BofA but

4   incredibly oppressive to the beneficiaries of the Trust, who were never even given a meaningful

5   opportunity to negotiate them.  The lease contained an arbitration clause and a clause that the

6   prevailing party in any action to enforce or interpret a term of the lease pay attorneys' fees.  Such

7   terms characteristically favor the larger party in any transaction, as arbitration is expensive and

8   smaller parties usually cannot face the possibility of paying a prevailing, larger party's attorneys'

9   fees if they lose a lawsuit.

10      30.     Finally, BofA assigned itself the leases in the B Street Property that were in place,

11  and reserved to itself the right to lease the property, but with no obligation to pass through the

12  income from any lease to the Trust.  Instead, BofA's only rent obligation was to pay the Trust the

13  exact dollar amount fixed by the lease.  To the extent BofA was able to lease the property for

14  more, it could keep the spread and thereby profit from the lease.

15      31.     Despite the presence of these oppressive and self-dealing terms in the lease, BofA

16  never saw to it that the beneficiaries had separate counsel.  Rather, Defendants used a lawyer,

17  who, on information and belief, later resigned with disciplinary charges pending against him, to

18  represent BofA and the beneficiaries at once.  Defendant Johnston interacted with the attorney.

19  Defendants never disclosed to Plaintiff that the lease allowed BofA to rent the property at below-

20  market rent, despite his and BofA's fiduciary obligation to do so.

21      32.     There is no question that Defendants knew they had to retain separate counsel for

22  the beneficiaries and go through a true process to get valid consents.  Indeed, in 1959, BofA

23  leased itself part of the B Street Property for a 25-year term, and retained separate counsel for the

24  beneficiaries and asked a judge to approve the lease.  In short, Defendants knew exactly what

25  had to be done to fulfill their fiduciary duties, but chose not to do it.

26      33.     None of the beneficiaries—including Teresa Micheletti—ever signed the lease.

27  Only the Bank's representatives signed the lease, as lessor and lessee.

28

KERR
&
AGSTAFFE
LLP

1  **BofA's Conduct During The Term of The Lease**

2       34.    Following the nominal termination of the Trust, BofA continued to manage and

3  operate the property in exactly the same way it had prior to the nominal termination of the Trust.

4  BofA had a continuing fiduciary obligation to manage the property in the best interests of

5  Plaintiff Art Micheletti, yet utterly failed to do so.

6       35.    BofA purported to terminate the Trust in 1982. It never submitted any of the

7  transactions to any court for an accounting. Instead, it returned the deed to the B Street Property

8  to Plaintiff Art Micheletti. BofA never, however, assigned the lease to Plaintiff Art Micheletti.

9  Indeed, to this day, not a single member of the Micheletti family has signed the lease or any

10 amendment or assignment thereof.

11      36.    Following this, BofA retained possession of the property, paying rent to the

12 Plaintiff, and later to the Micheletti Family Partnership, while subleasing some of the building

13 and occupying the rest. BofA occupied the same position with respect to operation of the

14 building from 1977 to the day it vacated the premises in 2007. BofA never involved Plaintiff Art

15 Micheletti in management of the building, or informed him that it would look to him for

16 direction as to how to manage the building, or informed him that it would look for and take

17 instructions from him as an owner.

18      37.    Plaintiff Art Micheletti reposed trust and confidence in BofA to act in his best

19 interests with respect to the B Street Property.

20      38.    BofA acted with impunity and never gave Plaintiff Art Micheletti any indication

21 that it did not consider itself a fiduciary with respect to the B Street Property. In 1994-1995,

22 BofA remodeled the property without any notice to Plaintiff Art Micheletti in a way that

23 eliminated two of the six units that were in the B Street Property. The 1994-1995 remodel was

24 based on plans that were never shown to the Michelettis. In that remodel, BofA demolished the

25 rear building completely and built a new section that can only be accessed from its adjacent

26 property. It further installed an elevator, a main electrical panel, telephone room and new

27 stairways, destroying the two units as rental space.

28

KERR
&
AGSTAFFE
LLP

1     39.     BofA has continued to remodel as it sees fit, without input from Plaintiff Art

2   Micheletti or any member of the Micheletti family.

3     40.     Further, BofA, while in possession of the B Street Property, acted as the property

4   manager and selected property managers without any involvement by the Michelettis, again

5   giving every indication that it continued to operate in the role it had as of 1977.

6     41.     BofA has now informed Plaintiff Art Micheletti and the Partnership that it will

7   not renew the 30-year lease for five more years, and plans to return the building to them.

8   Because of BofA's conduct with respect to the building, however, two of the six units no longer

9   exist much of remainder is essentially unrentable.  BofA, having got its hands on the property

10   years ago in a self-dealing transaction, and having operated the property at its whim for years

11   with no regard to the Michelettis, now wants to wash its hands of the property and stick the

12   Michelettis with the bill.  The Michelettis are now faced with the return of a building that is

13   worth far less than it would have been had BofA acted appropriately.

14

15                          **FIRST CAUSE OF ACTION**
                           **Breach of Fiduciary Duty**
                             **(Against All Defendants)**
16

17     42.     Plaintiff hereby incorporates by reference each and every allegation contained in

18   paragraphs 1 through 41, as though fully set forth herein.

19     43.     BofA, and Defendant Larry Johnston as Vice President and trust officer, owed

20   Plaintiff fiduciary duties of loyalty and due care both during the Trust and after its nominal

21   termination.  BofA also owed this duty to the Arthur and Janice Micheletti Inter Vivos Trust and

22   the Micheletti Family Partnership as the successors in interest to Plaintiff Art Micheletti's

23   interest.

24     44.     Defendants breached this duty of loyalty, inter alia, by (1) entering into the self-

25   dealing lease described herein, which allowed it to do whatever it wanted with the property, (2)

26   profiting at the expense of the trust beneficiaries by paying below market rent to the Trust while

27   occupying a large portion of the building for itself and subleasing the rest, and (3) causing

28   damage to the building by operating it solely for its own benefit.

KERR
&
AGSTAFFE
LLP

- 8 -
COMPLAINT

1    45.    BofA further breached its duty of due care by failing to manage the B Street

2  Property as a reasonably prudent person would have in the exercise of its own affairs.

3    46.    As a Vice President and trust officer, Defendant Johnston personally participated

4  in these breaches, inter alia, by negotiating the lease with counterparts at BofA and obtaining

5  approval of it, all to the detriment of Plaintiff.

6    47.    As a direct and proximate result of these breaches, Plaintiff has suffered damages

7  in an amount according to proof.

8    48.    Defendants' conduct was wanton, malicious, and oppressive, justifying an award

9  of punitive damages.

10                          **SECOND CAUSE OF ACTION**
                **IMPOSITION OF CONSTRUCTIVE TRUST AND ACCOUNTING**
11                          **(Against BofA and Does 1-5)**

12

13    49.    Plaintiff hereby incorporates by reference each and every allegation contained in

14  paragraphs 1 through 48, as though fully set forth herein.

15    50.    By entering into the self-dealing lease, BofA allowed itself the opportunity to

16  profit from paying the trust a below-market rent.  In breach of its fiduciary obligations, BofA

17  would pay the trust a below-market rent, yet occupy part of the building for itself and sub-let the

18  rest of the building, allowing BofA the opportunity to profit by the below-market rent

19  arrangement.  Such profit rightfully belongs to Plaintiff.

20    51.    BofA intentionally concealed from Plaintiff that the rent paid under the agreement

21  was below-market rent.

22    52.    BofA in fact profited from the below-market rent arrangement, in violation of its

23  fiduciary obligation to Plaintiff.

24    53.    By virtue of the above wrongful acts, BofA holds its profits from the below-

25  market rent arrangement in constructive trust for the benefit of Plaintiff.

26    54.    BofA has not disclosed to Plaintiff the amount by which it profited from the

27  below-market rent arrangement.  An accounting is therefore necessary to determine this amount.

28

                                    - 9 -
                                  COMPLAINT

**THIRD CAUSE OF ACTION**
**Waste**
**(Against BofA and Does 1-5)**

55.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 54, as though fully set forth herein.

56.    Beginning with the termination of the trust, BofA began to lease the B Street Property from the Plaintiff.

57.    BofA had possession of the B Street Property at that time and has remained in possession every since.

58.    Commencing at some point unknown, and continuing to the present day, BofA has caused injury to the premises by committing waste thereon by the acts described above. When BofA announced it would not renew the lease and subsequently vacated the premises, Plaintiff was damaged.

59.    Before the commencement of BofA's conduct, the B Street Property consisted of six rentable units. It now consists of three units with a vastly diminished value. As a direct and proximate result of BofA's conduct, Plaintiff has suffered damages in an amount according to proof.

60.    Each act and omission of Defendant as alleged above was done intentionally and intentionally concealed from Plaintiff. Defendant willfully and maliciously engaged in this conduct with the full knowledge that it would result in substantial damage to the premises and Plaintiff's interest in the premises. Therefore, Plaintiff is entitled to recover treble damages from BofA.

**FOURTH CAUSE OF ACTION**
**Constructive Fraud**
**(Against All Defendants)**

61.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 60, as though fully set forth herein.

62.    BofA was the trustee of the Trust at the time the lease was entered into. Further, BofA remained in a fiduciary position with respect to the B Street Property after the nominal

- 10 -
COMPLAINT

termination of the Trust. As such, BofA was in a fiduciary relationship with respect to the beneficiary, Plaintiff, and the Assignors as successors in interest to Art Micheletti.

63.     Defendant Johnston, as a Vice President and Trust Officer, likewise owed Plaintiff a fiduciary duty.

64.     Despite being in this position, BofA gained an advantage at the expense of the beneficiaries of the Trust by entering into the below-market rent arrangement, and continued to profit from this arrangement during the term of the lease. Defendant Johnston participated in this breach. Despite their fiduciary obligations, Defendants failed to disclose at any time that it was in fact profiting from the below-market rent arrangement.

65.     Defendants did the acts herein alleged with the intent to deceive and defraud Plaintiff, and concealed from Plaintiff the true market rental value of the property.

66.     Plaintiff in fact placed confidence and reliance in Defendants until on or about mid-2007, when BofA began preparing to demise the property, when Plaintiff discovered that in fact BofA had been profiting from the below market rental arrangement for years.

## FIFTH CAUSE OF ACTION
### Negligence
### (Against BofA and Does 4-10)

67.     Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 66, as though fully set forth herein.

68.     BofA managed the property for Plaintiff and Assignors. It therefore owed a duty of due care to them.

69.     BofA failed to exercise due care in its management of the B Street Property.

70.     As a direct and proximate result of BofA's failure to exercise due care, Plaintiff and Assignors has been damaged in an amount to be proved at trial, including by the return of the B Street Property in condition that is essentially unrentable.

71.     BofA's conduct was wanton, malicious, and oppressive, warranting an award of punitive damages.

## SIXTH CAUSE OF ACTION
### Conversion
### (Against All Defendants)

72.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 71, as though fully set forth herein.

73.    BofA obtained the leasehold interest in the B Street Property by its own breach of fiduciary duty.  It then converted the property to its own use for the next 30 years.

74.    As the Vice President and Trust Officer, Defendant Johnston personally participated in wrongfully obtaining the B Street Property for BofA's own use.

75.    As  direct and result of BofA's unauthorized use of the B Street Property, Plaintiff was deprived of the use of the B Street Property, including the ability to lease it for market rent.

76.    Defendant's conduct was wanton, malicious, and oppressive, warranting an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1.    For compensatory damages in an amount according to proof;

2.    For a declaration that BofA holds profits it made by the below-market rent arrangement in constructive trust for Plaintiff;

3.    For an accounting;

4.    For pre-judgment interest;

5.    For costs of suit;

6.    For punitive damages.

DATED: July 16, 2008                     KERR & WAGSTAFFE LLP

                                         By _____
                                            ADRIAN J. SAWYER

                                         Attorneys for Plaintiff
                                         ART MICHELETTI

1

## JURY DEMAND

2      Plaintiff demands a trial by jury.

3    DATED: July 16, 2008

4                                          KERR & WAGSTAFFE LLP

5                                    By

6                                          ADRIAN J. SAWYER

7                                          Attorneys for Plaintiff
                                           ART MICHELETTI
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KERR
&
WAGSTAFFE
LLP

COMPLAINT

**Exhibit C**

1   BUCHALTER NEMER
    A Professional Corporation
2   JAMES B. WRIGHT (SBN: 63241)
    RICHARD C. DARWIN (SBN: 161245)
3   333 Market Street, 25th Floor
    San Francisco, CA 94105-2126
4   Telephone: (415) 227-0900
    Facsimile: (415) 227-0770
5   *jwright@buchalter.com*

6   Attorneys for Defendants
    BANK OF AMERICA, N.A. and LARRY JOHNSTON
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                                          CV 08      3557

11  ART MICHELETTI, an individual,          CASE NO.

12           Plaintiff,                     NOTICE OF REMOVAL OF CIVIL
                                            ACTION PURSUANT TO 28 U.S.C.
13       vs.                                SECTIONS 1441(a), 1441(b), AND 1446
                                            (DIVERSITY)
14  BANK OF AMERICA, N.A., a national
    banking association, LARRY JOHNSTON,
15  an individual, and DOES 1-10,

16           Defendants.

17

18

19       TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE

20  NORTHERN DISTRICT OF CALIFORNIA, ALL INTERESTED PARTIES, AND THEIR

21  COUNSEL OF RECORD:

22       PLEASE TAKE NOTICE that Defendants Bank of America, N.A. ("Bank of America")

23  and Larry Johnston hereby remove the above-captioned action, Case No. CGC 08-477590,

24  currently pending in the Superior Court of the State of California in and for the County of San

25  Francisco, to the United States District Court for the Northern District of California, pursuant to

26  28 U.S.C. Sections 1441(a), 1441(b), and 1446. Federal jurisdiction over this action is proper on

27  the basis of diversity jurisdiction under 28 U.S.C. Sections 1332 and 1441(b). Removal is based

28  upon the following grounds:

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2106201v3

                              1

EXHIBIT C

1    1.    On or about June 11, 2008, Bank of America filed a petition to compel arbitration

2    in the United States District Court for the Northern District of California, entitled "*Bank of*

3    *America, N.A., a national banking association, Petitioner, v. Micheletti Family Partnership, a*

4    *California limited partnership, Arthur Micheletti, an individual, and Janice Micheletti, an*

5    *individual, Respondents*," Case No. 08 CV-02902 JSW (the "Federal Petition").    Arthur

6    Micheletti, Janice Micheletti, and the Micheletti Family Partnership were all hand served with a

7    summons and the Federal Petition on June 13, 2008.  In the Federal Petition, Bank of America

8    alleged that disputes have arisen between itself and Arthur Micheletti, Janice Micheletti, and the

9    Micheletti Family Partnership ("Partnership") relating to the terms of a Lease Agreement for

10    premises located in San Mateo, California (the "Lease Agreement"), and relating to allegations by

11    the Michelettis that Bank of America breached a fiduciary duty in its dual role as the trustee of a

12    trust that owned the subject premises, and as the tenant in the Lease Agreement.  On the basis of

13    those disputes, and the existence of an arbitration provision in the Lease Agreement, Bank of

14    America seeks an order from this federal district court compelling the parties to arbitrate the

15    aforementioned disputes.

16    2.    On or about July 16, 2008, in an effort to avoid federal jurisdiction, plaintiff Art

17    Micheletti ("Micheletti") filed an action in the Superior Court of the State of California in and for

18    the County of San Francisco, entitled "*Art Micheletti, an individual, Plaintiff. v. Bank of America,*

19    *N.A., a national banking association, Larry Johnston, an individual, and Does 1-10, Defendants*,"

20    Case No. CGC 08-477590 (the "State Action") to adjudicate in state court the same claims raised

21    in the Federal Petition.  On July 16, 2008, the San Francisco Superior Court issued a notice

22    scheduling a case management conference.  True and correct copies of the summons, complaint,

23    and the notice of case management conference, which together constitute the entirety of the

24    process, pleadings and orders in the State Action, are attached hereto as Exhibit A.

25    3.    The complaint in the State Action alleges causes of action for (1) breach of

26    fiduciary duty, (2) imposition of a constructive trust, (3) waste, (4) constructive fraud,

27    (5) negligence, and (6) conversion.  The summons and complaint in the State Action were served

28    on Bank of America and Johnston, through their counsel, by hand on July 18, 2008.

1    4.    Pursuant to 28 U.S.C. Section 1446 and Rule 6 of the Federal Rules of Civil

2    Procedure, Bank of America and Mr. Johnston have until August 18, 2008 to file a notice of

3    removal.    This notice of removal, which is jointly filed on behalf of Bank of America and

4    Mr. Johnston, is therefore timely filed.

5                                        **JURISDICTION**

6    5.    The State Action is a matter over which this Court has original diversity

7    jurisdiction under 28 U.S.C. Section 1332, and is properly removable pursuant to the provisions

8    of 28 U.S.C. Sections 1441(a) and (b), because it is a civil action wherein the amount in

9    controversy exceeds the sum of $75,000, exclusive of costs and interest, and – with the exception

10   of a sham defendant who may be disregarded under the "fraudulent joinder" rule – it is between

11   citizens of different states, as set forth below.

12   6.    Plaintiff Micheletti is a resident of San Mateo County, California.

13   7.    Defendant Bank of America is a national banking association with its headquarters

14   in Charlotte, North Carolina.

15   8.    Defendant Larry Johnston is a 78-year old former employee of Bank of America

16   and is a resident of San Mateo County, California.  Mr. Johnston is identified and sued in the

17   State Action solely in his capacity as a Bank of America employee; the complaint does not

18   contain a single allegation against Mr. Johnston that is not explicitly premised upon his role as an

19   employee of the bank.  *See, e.g.,* Complaint at ¶¶ 8, 31, 43, 46, 63, and 74.  Rather, Mr. Johnston

20   was included as a defendant for the sole purpose of defeating diversity jurisdiction and avoiding

21   the jurisdiction of the federal courts.  Because there is no valid legal or factual basis upon which

22   Mr. Johnston may be held independently liable to Micheletti, and that no cause of action can be

23   stated against him, Mr. Johnston's joinder as a defendant in the State Action was fraudulent and

24   must be disregarded for purposes of determining the existence of diversity jurisdiction.  *See,*

25   *Morris v. Princess Cruises, Inc.* (9th Cir. 2001) 236 F.3d 1061; *McCabe v. General Foods, Inc.*

26   (9th Cir. 1987) 811 F.2d 1336, 1339.

27   9.    The complaint in the State Action does not contain a specific reference to an

28   amount in controversy.  When the amount in controversy is unclear, the Court may consider the

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

NOTICE OF REMOVAL

1   amount in controversy based on the damages that can reasonably be anticipated at the time of

2   removal. *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002).

3         10.    On or about July 18, 1977, Bank of America N.T. & S.A., as the tenant, entered

4   into the Lease Agreement with the Arturo Micheletti Trust ("Trust") as landlord, for premises

5   located in San Mateo, California. Micheletti was a beneficiary of the Trust. Bank of America,

6   N.A. is the successor in interest to Bank of America N.T. & S.A. As outlined in the complaint in

7   the State Action and the Federal Petition, disputes have arisen between the Bank and Micheletti

8   regarding the Lease Agreement. Micheletti has alleged that the Lease Agreement is invalid and

9   should be revoked because the Bank's predecessor-in-interest allegedly breached its fiduciary

10  duties as the trustee of the Trust by signing the Lease Agreement both as trustee/landlord and as

11  tenant. These are the same disputes that form the subject matter of the Federal Petition described

12  above. As a consequence of the disputes outlined in the complaint, Micheletti is demanding that

13  the Bank perform extensive repairs at the leased premises and is asserting damage claims in

14  excess of $1 million. Micheletti's alleged damages therefore exceed the $75,000 amount in

15  controversy requirement.

16                         **INTRADISTRICT ASSIGNMENT**

17        11.    Pursuant to Local Rule 3-2(d), this action should be assigned to the San Francisco

18  or Oakland Division, as a substantial part of the events giving rise to the claims addressed in the

19  State Action occurred in San Mateo County, California.

20                                **NOTICE**

21        12.    Attached hereto as Exhibit "B" is a copy of the Notice to State Court and Adverse

22  Parties of Removal of Civil Action to United States District Court under 28 U.S.C. §§ 1441 and

23  1446 Based On Diversity Jurisdiction. Bank of America will promptly serve Exhibit B on

24  counsel for Micheletti, and will file it with the Clerk of the San Francisco Superior Court. *See* 28

25  U.S.C. §§ 1446(a), (d).

26        WHEREFORE, Bank of America prays that the above-entitled action now pending in the

27  Superior Court of the State of California in and for the County of San Francisco be removed to

28

BN 2106201v3                         4

1    this Court pursuant to 28 U.S.C. § 1441(b).

2    DATED: July __2ᶜ/__, 2008

BUCHALTER NEMER
A Professional Corporation

By: _____
RICHARD C. DARWIN
Attorneys for Defendants
BANK OF AMERICA, N.A. and LARRY
JOHNSTON

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

5

NOTICE OF REMOVAL

# SUMMONS
## (CITACIÓN JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
BANK OF AMERICA, N.A., a national banking
association, and LARRY P. JOHNSTON, an individual

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ART MICHELETTI, an individual

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you.  Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response.  You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
San Francisco Superior Court
400 McAllister St.
San Francisco 94102

CASE NUMBER:
*(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
James M. Wagstaffe (95535)                    (415) 371-8500
Adrian J. Sawyer (203712)
Kerr & Wagstaffe LLP
100 Spear St., Ste. 1800, San Francisco, CA, 94105

DATE:                                      Clerk, by _____, Deputy
*(Fecha)*                                  *(Secretario)*                          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf *(specify):* Bank of America  N.A.

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☒ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California

**SUMMONS**

Legal Solutions

Code of Civil Procedure §§ 412.20, 465

Page 1 of 1

EXHIBIT A

1   JAMES M. WAGSTAFFE (95535)
    ADRIAN J. SAWYER (203712)
2   **KERR & WAGSTAFFE LLP**
    100 Spear Street, Suite 1800
3   San Francisco, CA 94105–1528
    Telephone: (415) 371-8500
4   Fax: (415) 371-0500
    Email: sawyer@kerrwagstaffe.com
5
    Attorneys for Plaintiff
6   ART MICHELETTI

ENDORSED
F I L E D
San Francisco County Superior Court

JUL 1 6 2008

GORDON PARK-LI, Clerk
BY: _____
          Deputy Clerk
          P IVATT

CASE MANAGEMENT CONFERENCE SET

DEC 1 9 2008 - 9ᵃᵐ AM

7

8                              DEPARTMENT 212

9        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                  **COUNTY OF SAN FRANCISCO**

11

12   ART MICHELETTI, an individual,          Case No.

13   Plaintiff,                              **COMPLAINT:**

14   v.                                       **(1) BREACH OF FIDUCIARY DUTY**

15   BANK OF AMERICA, N.A., a national        **(2) IMPOSITION OF CONSTRUCTIVE
16   banking association, LARRY P. JOHNSTON,  TRUST AND ACCOUNTING**
17   an individual, and DOES 1-10,
                                              **(3) WASTE**
18   Defendants.
                                              **(4) CONSTRUCTIVE FRAUD**
19
                                              **(5) NEGLIGENCE**
20
                                              **(6) CONVERSION**
21
                                              **JURY TRIAL DEMANDED**
22

23

24

25

26

27

28

COMPLAINT

# SUMMARY OF CLAIM

1.     This is an action involving over thirty years' worth of self-dealing by Bank of America ("BofA"), culminating in events which are only now unfolding. Since 1929, BofA served as the trustee of a trust created by Art Micheletti's now-deceased father, managing (or, more accurately, mismanaging) real estate in the Bay Area for the trust. After years of mismanaging the property, and on the eve of the death of the settlor's wife—an event that would terminate the trust under its terms—BofA took the opportunity to lock up trust property in a below market 30-year lease **to itself** with an option to renew for 20 years more thereafter. BofA wanted this particular property because BofA owned the property next door.

2.     Not surprisingly, BofA negotiated very good terms with itself. BofA paid the trust below market rent that did not even fully track CPI increases, occupying a large portion of the building and subleasing the rest. And BofA allowed itself to do whatever it wanted with the building, subject only to the obligation to put up a demising wall between its property next door and the leased property upon termination of the lease. As a fiduciary who locked up a trust asset in a long-term obligation that exceeded the terms of the trust and was entered into for BofA's own benefit, BofA had a continuing fiduciary duty with respect to the property that continued for the duration of the lease.

3.     When the trust terminated shortly after BofA entered into this self-dealing lease, BofA remained in possession of the building, acting as the owner for all intents and purposes, remodeling without telling the Micheletti family, and purporting to manage the property for their benefit. Thus did BofA continue in a fiduciary capacity with respect to the property.

4.     Thirty years have passed, and BofA is ready to wash its hands of the building. It has benefited from a below-market rent for years, has damaged the property, and has now returned possession of the damaged building to Plaintiff and the Micheletti family. This action seeks to remedy BofA's breach of trust and waste of the property.

# VENUE

5.     Venue is proper in this County because a substantial part of the events giving rise to the claim occurred in this County. On information and belief, the lease that gives rise to the

1  breaches of fiduciary duty alleged herein was signed and approved by BofA in San Francisco,

2  and the trust at issue encompassed property located in San Francisco County. In addition, at the

3  time that lease was negotiated, BofA's headquarters were in San Francisco, and even now,

4  BofA's principal place of business in California is located in San Francisco.

### PARTIES

6      6.     Plaintiff Art Micheletti, an individual, resides in Santa Clara County, California

7  and is a beneficiary of the Arturo Micheletti Trust.

8      7.     Defendant Bank of America, N.A., is the successor in interest to Bank of

9  America, N.T. & S.A., the trustee of the Arturo Micheletti Trust, and the past landlord and

10  current tenant and sublessor of the property in San Mateo.

11     8.     Defendant Larry P. Johnston is a former Vice President and trust officer of Bank

12  of America. On information and belief, Johnston is a California citizen and resides in San Mateo

13  County, California.

14     9.     The true names and capacities, whether individual, corporate, associate or

15  otherwise, of defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore

16  sues said defendants by such fictitious names pursuant to California Code of Civil Procedure

17  section 474. Plaintiff further alleges that each of said fictitious defendants is in some manner

18  responsible for the acts and occurrences herein set forth. Plaintiff will amend this complaint to

19  show these defendants' true names and capacities when the same are ascertained, as well as the

20  manner in which each fictitious defendant is responsible.

21     10.    Plaintiff is informed and believes, and upon such basis allege, that at all times

22  herein mentioned, each of the defendants herein was an agent, servant, employee, co-conspirator,

23  partner, joint venturer, wholly owned and controlled subsidiary, and/or alter ego of each of the

24  remaining defendants, and was at all times acting within the course and scope of said agency,

25  service, employment, conspiracy, partnership and/or joint venture.

26

27

28

# FACTUAL ALLEGATIONS

## Overview Of The Trust

1         11.     In 1931, Arturo Micheletti, as trustor, executed a Substituted Declaration of Trust whereby he created the Arturo Micheletti Trust (the "Trust"). BofA was the trustee of the Trust. Arturo Micheletti chose BofA because he had a close personal friendship with A.P. Gianinni, the founder of BofA. Plaintiff Art Micheletti's middle name, Amadeo, was chosen in honor of A.P. Gianinni, whose first name was also Amadeo. As a result, Arturo Micheletti had every reason to believe that BofA would do the right thing by his family, the beneficiaries of the Trust. As explained below, by 1977, long after Arturo Micheletti and A.P. Gianinni had passed away, BofA was doing anything but the right thing by the beneficiaries.

        12.     In 1940, Arturo Micheletti executed a First Amendment to Substituted Declaration of Trust (the "Trust Document"). BofA remained the trustee. The Trust Document provided that the trust corpus consisted of real property situated in San Francisco and San Mateo Counties. Among the real property that made up the trust corpus was a parcel in San Mateo located on B Street (the "B Street Property").

        13.     Arturo Micheletti, the trustor, died in September 1940, shortly after executing the Trust Document.

        14.     The Trust Document provided that, after the trustor's death, the trust became irrevocable. The Trust Document further provided that thereafter BofA was to make monthly distributions to Teresa Micheletti, the trustor's wife and Plaintiff Art Micheletti's mother, and to Plaintiff Art Micheletti and his brother, until the termination of the Trust.

        15.     The Trust Document further provided that that Trust would terminate upon the death of Teresa Micheletti, if Plaintiff Art Micheletti and his brother were over 25 at the time.

        16.     Upon termination, the principal of the trust estate and "any undistributed income" on that principal was to go in equal shares to Art and his brother.

        17.     In 1980, Teresa Micheletti died. The Trust nominally terminated. Under this nominal termination, the B Street Property went to Art in its entirety.

18.    Subsequent to the nominal termination of the trust, Plaintiff Art Micheletti deeded the B Street Property to himself and his wife as community property in 1982. Then, in 1993, the B Street Property was transferred to a trust set up by Plaintiff Art Micheletti and his wife, the Arthur J. Micheletti and Janice M. Micheletti 1993 Inter Vivos Trust ("1993 Trust"). Finally, in 1994, the B Street Property was deeded to Plaintiff Art Micheletti and his wife as general partners of the Micheletti Family Partnership. The 1993 Trust and the Micheletti Family Partnership have assigned their claims against Defendants to Art Micheletti, Plaintiff herein.

**On The Eve of Trust Termination, BofA Enters Into A Self-Dealing Lease**

19.    The Trust Document gave the trustee the "absolute discretion to lease for terms within or extending beyond the duration of the trust . . . for such consideration . . . as the trustee shall in its absolute discretion deem for the best interests of the trust . . . ."

20.    As the emphasized language makes clear, this discretion was supposed to be exercised in the best interests of the trust. BofA, however, in violation of its fiduciary duty, leased the B Street Property to itself on very favorable terms, in a long-term lease that would undoubtedly extend beyond the term of the trust, as described next.

21.    In 1977, when Teresa Micheletti was 83 years old and in poor health, BofA, the trustee entered into a ground lease with BofA, whereby BofA leased the trust property for 30 years. As it was virtually certain that Teresa Micheletti would not live another 30 years, BofA knew when it entered into the ground lease that the lease would outlast the Trust.

22.    BofA was keen to get its hands on the property, as the B Street Property was adjacent to a BofA branch in San Mateo. BofA believed it could expand its operations in that branch via a sweetheart deal, that it would negotiate with itself, that would let it have the run of the B Street Property. Indeed, the year after signing the lease, BofA made a favorable lot-line adjustment to 255 South B Street for no apparent reason.

23.    The 1977 lease was enormously favorable to BofA. First, it provided that BofA would pay only $2000 per month for the entire B Street Property, which at the time consisted of 5 rentable units. This monthly rent would only adjust every 5 years, and that adjustment was designed not even to keep pace with the consumer price index, let alone market rents in the area.

- 4 -
COMPLAINT

1   $2000 per month was at the time below-market rent for the B Street Property, and market rent in

2   the Bay Area and for the B Street Property has continually increased at a rate exceeding that of

3   the CPI since 1977.

4        24.    The gap between market rent for the entire B Street Property and the rent BofA

5   paid to the Trust under the lease of that property grew quickly. Indeed, by 1982, the rent for one

6   of the smaller units of the B Street Property was already $675 per month, or less than one third of

7   the rent BofA was paying the Trust for the entire building. And, while that unit was only

8   approximately 1,000 square feet, BofA was occupying over 5,000 square feet of the B Street

9   Property for itself, and paying only $2,000 per month to the Trust.

10       25.    The simple fact is that Defendants made no effort to establish what a fair rental

11   value would be, despite their fiduciary duties to the beneficiaries of the Trust. Defendants

12   further intentionally concealed that BofA would pay the trust below-market rent. In fact,

13   Defendants failed to discuss the rental amount with any beneficiary of the Trust, preferring

14   instead to engage in cozy internal negotiations.

15       26.    The truth about BofA's below market rent arrangement and other misconduct

16   only came out in 2007, as BofA was preparing to vacate the premises and Plaintiff was in the

17   process of finding new tenants.

18       27.    Defendants' disregard of their fiduciary obligations did not end with including a

19   term that allowed it to pay below-market rent to the Trust. Defendants went further, and inserted

20   clauses in the lease allowing BofA to do anything it wanted to the B Street Property, up to and

21   including demolishing the structures on the B Street Property entirely, provided that at the end of

22   the lease, BofA put up a demising wall to separate its property (which was adjacent to the B

23   Street Property) from the B Street Property. In short, BofA was allowed to demolish

24   improvements, construct new improvements and remodel without limits.

25       28.    In addition, the lease omitted terms that would have protected the Trust and are a

26   standard part of any lease. There was no obligation on BofA's part to return the B Street

27   Property to the same financial and/or physical condition at its own expense at termination of the

28   lease, and there was no protection at the termination of tenancy from waste, misuse or

1  destruction by BofA. As explained above, Defendants allowed BofA considerable liberty to do
2  just the opposite.

3       29.    The lease also contained boilerplate terms that were helpful to BofA but
4  incredibly oppressive to the beneficiaries of the Trust, who were never even given a meaningful
5  opportunity to negotiate them. The lease contained an arbitration clause and a clause that the
6  prevailing party in any action to enforce or interpret a term of the lease pay attorneys' fees. Such
7  terms characteristically favor the larger party in any transaction, as arbitration is expensive and
8  smaller parties usually cannot face the possibility of paying a prevailing, larger party's attorneys'
9  fees if they lose a lawsuit.

10      30.    Finally, BofA assigned itself the leases in the B Street Property that were in place,
11 and reserved to itself the right to lease the property, but with no obligation to pass through the
12 income from any lease to the Trust. Instead, BofA's only rent obligation was to pay the Trust the
13 exact dollar amount fixed by the lease. To the extent BofA was able to lease the property for
14 more, it could keep the spread and thereby profit from the lease.

15      31.    Despite the presence of these oppressive and self-dealing terms in the lease, BofA
16 never saw to it that the beneficiaries had separate counsel. Rather, Defendants used a lawyer,
17 who, on information and belief, later resigned with disciplinary charges pending against him, to
18 represent BofA and the beneficiaries at once. Defendant Johnston interacted with the attorney.
19 Defendants never disclosed to Plaintiff that the lease allowed BofA to rent the property at below-
20 market rent, despite his and BofA's fiduciary obligation to do so.

21      32.    There is no question that Defendants knew they had to retain separate counsel for
22 the beneficiaries and go through a true process to get valid consents. Indeed, in 1959, BofA
23 leased itself part of the B Street Property for a 25-year term, and retained separate counsel for the
24 beneficiaries and asked a judge to approve the lease. In short, Defendants knew exactly what
25 had to be done to fulfill their fiduciary duties, but chose not to do it.

26      33.    None of the beneficiaries—including Teresa Micheletti—ever signed the lease.
27 Only the Bank's representatives signed the lease, as lessor and lessee.

28

1    <u>BofA's Conduct During The Term of The Lease</u>

2        34.    Following the nominal termination of the Trust, BofA continued to manage and

3    operate the property in exactly the same way it had prior to the nominal termination of the Trust.

4    BofA had a continuing fiduciary obligation to manage the property in the best interests of

5    Plaintiff Art Micheletti, yet utterly failed to do so.

6        35.    BofA purported to terminate the Trust in 1982.  It never submitted any of the

7    transactions to any court for an accounting.  Instead, it returned the deed to the B Street Property

8    to Plaintiff Art Micheletti.  BofA never, however, assigned the lease to Plaintiff Art Micheletti.

9    Indeed, to this day, not a single member of the Micheletti family has signed the lease or any

10   amendment or assignment thereof.

11       36.    Following this, BofA retained possession of the property, paying rent to the

12   Plaintiff, and later to the Micheletti Family Partnership, while subleasing some of the building

13   and occupying the rest.  BofA occupied the same position with respect to operation of the

14   building from 1977 to the day it vacated the premises in 2007.  BofA never involved Plaintiff Art

15   Micheletti in management of the building, or informed him that it would look to him for

16   direction as to how to manage the building, or informed him that it would look for and take

17   instructions from him as an owner.

18       37.    Plaintiff Art Micheletti reposed trust and confidence in BofA to act in his best

19   interests with respect to the B Street Property.

20       38.    BofA acted with impunity and never gave Plaintiff Art Micheletti any indication

21   that it did not consider itself a fiduciary with respect to the B Street Property.  In 1994-1995,

22   BofA remodeled the property without any notice to Plaintiff Art Micheletti in a way that

23   eliminated two of the six units that were in the B Street Property.  The 1994-1995 remodel was

24   based on plans that were never shown to the Michelettis.  In that remodel, BofA demolished the

25   rear building completely and built a new section that can only be accessed from its adjacent

26   property.  It further installed an elevator, a main electrical panel, telephone room and new

27   stairways, destroying the two units as rental space.

28

KERR

1    39.    BofA has continued to remodel as it sees fit, without input from Plaintiff Art

2    Micheletti or any member of the Micheletti family.

3    40.    Further, BofA, while in possession of the B Street Property, acted as the property

4    manager and selected property managers without any involvement by the Michelettis, again

5    giving every indication that it continued to operate in the role it had as of 1977.

6    41.    BofA has now informed Plaintiff Art Micheletti and the Partnership that it will

7    not renew the 30-year lease for five more years, and plans to return the building to them.

8    Because of BofA's conduct with respect to the building, however, two of the six units no longer

9    exist much of remainder is essentially unrentable.  BofA, having got its hands on the property

10    years ago in a self-dealing transaction, and having operated the property at its whim for years

11    with no regard to the Michelettis, now wants to wash its hands of the property and stick the

12    Michelettis with the bill.  The Michelettis are now faced with the return of a building that is

13    worth far less than it would have been had BofA acted appropriately.

14

15                        **FIRST CAUSE OF ACTION**
                        **Breach of Fiduciary Duty**
16                        **(Against All Defendants)**

17    42.    Plaintiff hereby incorporates by reference each and every allegation contained in

18    paragraphs 1 through 41, as though fully set forth herein.

19    43.    BofA, and Defendant Larry Johnston as Vice President and trust officer, owed

20    Plaintiff fiduciary duties of loyalty and due care both during the Trust and after its nominal

21    termination.  BofA also owed this duty to the Arthur and Janice Micheletti Inter Vivos Trust and

22    the Micheletti Family Partnership as the successors in interest to Plaintiff Art Micheletti's

23    interest.

24    44.    Defendants breached this duty of loyalty, inter alia, by (1) entering into the self-

25    dealing lease described herein, which allowed it to do whatever it wanted with the property, (2)

26    profiting at the expense of the trust beneficiaries by paying below market rent to the Trust while

27    occupying a large portion of the building for itself and subleasing the rest, and (3) causing

28    damage to the building by operating it solely for its own benefit.

45.    BofA further breached its duty of due care by failing to manage the B Street Property as a reasonably prudent person would have in the exercise of its own affairs.

46.    As a Vice President and trust officer, Defendant Johnston personally participated in these breaches, inter alia, by negotiating the lease with counterparts at BofA and obtaining approval of it, all to the detriment of Plaintiff.

47.    As a direct and proximate result of these breaches, Plaintiff has suffered damages in an amount according to proof.

48.    Defendants' conduct was wanton, malicious, and oppressive, justifying an award of punitive damages.

### SECOND CAUSE OF ACTION
### IMPOSITION OF CONSTRUCTIVE TRUST AND ACCOUNTING
### (Against BofA and Does 1-5)

49.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 48, as though fully set forth herein.

50.    By entering into the self-dealing lease, BofA allowed itself the opportunity to profit from paying the trust a below-market rent. In breach of its fiduciary obligations, BofA would pay the trust a below-market rent, yet occupy part of the building for itself and sub-let the rest of the building, allowing BofA the opportunity to profit by the below-market rent arrangement. Such profit rightfully belongs to Plaintiff.

51.    BofA intentionally concealed from Plaintiff that the rent paid under the agreement was below-market rent.

52.    BofA in fact profited from the below-market rent arrangement, in violation of its fiduciary obligation to Plaintiff.

53.    By virtue of the above wrongful acts, BofA holds its profits from the below-market rent arrangement in constructive trust for the benefit of Plaintiff.

54.    BofA has not disclosed to Plaintiff the amount by which it profited from the below-market rent arrangement. An accounting is therefore necessary to determine this amount.

COMPLAINT

### THIRD CAUSE OF ACTION
#### Waste
#### (Against BofA and Does 1-5)

55.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 54, as though fully set forth herein.

56.    Beginning with the termination of the trust, BofA began to lease the B Street Property from the Plaintiff.

57.    BofA had possession of the B Street Property at that time and has remained in possession every since.

58.    Commencing at some point unknown, and continuing to the present day, BofA has caused injury to the premises by committing waste thereon by the acts described above. When BofA announced it would not renew the lease and subsequently vacated the premises, Plaintiff was damaged.

59.    Before the commencement of BofA's conduct, the B Street Property consisted of six rentable units.  It now consists of three units with a vastly diminished value.  As a direct and proximate result of BofA's conduct, Plaintiff has suffered damages in an amount according to proof.

60.    Each act and omission of Defendant as alleged above was done intentionally and intentionally concealed from Plaintiff.  Defendant willfully and maliciously engaged in this conduct with the full knowledge that it would result in substantial damage to the premises and Plaintiff's interest in the premises..  Therefore, Plaintiff is entitled to recover treble damages from BofA.

### FOURTH CAUSE OF ACTION
#### Constructive Fraud
#### (Against All Defendants)

61.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 60, as though fully set forth herein.

62.    BofA was the trustee of the Trust at the time the lease was entered into.  Further, BofA remained in a fiduciary position with respect to the B Street Property after the nominal

1  termination of the Trust. As such, BofA was in a fiduciary relationship with respect to the

2  beneficiary. Plaintiff, and the Assignors as successors in interest to Art Micheletti.

3       63.    Defendant Johnston, as a Vice President and Trust Officer, likewise owed

4  Plaintiff a fiduciary duty.

5       64.    Despite being in this position, BofA gained an advantage at the expense of the

6  beneficiaries of the Trust by entering into the below-market rent arrangement, and continued to

7  profit from this arrangement during the term of the lease. Defendant Johnston participated in this

8  breach. Despite their fiduciary obligations, Defendants failed to disclose at any time that it was

9  in fact profiting from the below-market rent arrangement.

10       65.    Defendants did the acts herein alleged with the intent to deceive and defraud

11  Plaintiff, and concealed from Plaintiff the true market rental value of the property.

12       66.    Plaintiff in fact placed confidence and reliance in Defendants until on or about

13  mid-2007, when BofA began preparing to demise the property, when Plaintiff discovered that in

14  fact BofA had been profiting from the below market rental arrangement for years.

15                     **FIFTH CAUSE OF ACTION**

16                           **Negligence**

               (Against BofA and Does 4-10)

17

18       67.    Plaintiff hereby incorporates by reference each and every allegation contained in

19  paragraphs 1 through 66, as though fully set forth herein.

20       68.    BofA managed the property for Plaintiff and Assignors. It therefore owed a duty

21  of due care to them.

22       69.    BofA failed to exercise due care in its management of the B Street Property.

23       70.    As a direct and proximate result of BofA's failure to exercise due care, Plaintiff

24  and Assignors has been damaged in an amount to be proved at trial, including by the return of

25  the B Street Property in condition that is essentially unrentable.

26       71.    BofA's conduct was wanton, malicious, and oppressive, warranting an award of

27  punitive damages.

28

# SIXTH CAUSE OF ACTION
## Conversion
### (Against All Defendants)

72.    Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 71, as though fully set forth herein.

73.    BofA obtained the leasehold interest in the B Street Property by its own breach of fiduciary duty.  It then converted the property to its own use for the next 30 years.

74.    As the Vice President and Trust Officer, Defendant Johnston personally participated in wrongfully obtaining the B Street Property for BofA's own use.

75.    As  direct and result of BofA's unauthorized use of the B Street Property, Plaintiff was deprived of the use of the B Street Property, including the ability to lease it for market rent.

76.    Defendant's conduct was wanton, malicious, and oppressive, warranting an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1.    For compensatory damages in an amount according to proof;

2.    For a declaration that BofA holds profits it made by the below-market rent arrangement in constructive trust for Plaintiff;

3.    For an accounting;

4.    For pre-judgment interest;

5.    For costs of suit;

6.    For punitive damages.

DATED: July 16, 2008                    KERR & WAGSTAFFE LLP

                              By _____
                                 ADRIAN J. SAWYER

                                 Attorneys for Plaintiff
                                 ART MICHELETTI

1

## JURY DEMAND

2        Plaintiff demands a trial by jury.

3  DATED: July 16, 2008

4                                          KERR & WAGSTAFFE LLP

5                                    By _____

6                                          ADRIAN J. SAWYER

7                                          Attorneys for Plaintiff
                                           ART MICHELETTI
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

DATE: 12-19-2005

TIME: 9:00 AM

PLACE:  Department 212
        400 McAllister Street
        San Francisco, CA 94102-3680

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

## ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL. (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges

1    BUCHALTER NEMER
     A Professional Corporation
2        JAMES B. WRIGHT (#63241)
         RICHARD C. DARWIN (#161245)
3    333 Market Street, 25th Floor
     San Francisco, CA  94105-2126
4    Telephone: (415) 227-0900
     Facsimile: (415) 227-0770
5
     Attorneys for Defendants
6    BANK OF AMERICA N.A. and LARRY JOHNSTON

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SAN FRANCISCO

10

11   ART MICHELETTI, an individual,           )   CASE NO.  CGC-08-477590
                                              )
12              Plaintiff,                    )   **NOTICE TO STATE COURT AND**
                                              )   **ADVERSE PARTIES OF REMOVAL OF**
13        vs.                                 )   **CIVIL ACTION TO THE UNITED**
                                              )   **STATES DISTRICT COURT UNDER**
14   BANK OF AMERICA, N.A., a national        )   **DIVERSITY JURISDICTION, 28 U.S.C.**
     banking association, LARRY JOHNSTON,     )   **§1441(B)**
15   an individual, and DOES 1-10,            )
                                              )
16              Defendants.                   )
     _____)

17
     **TO THE CLERK OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
18
     **FOR THE COUNTY OF SAN FRANCISCO, AND ALL PARTIES OF RECORD:**
19
          **PLEASE TAKE NOTICE** that Bank of America and Larry Johnston, defendants in the
20
     above-entitled action, have filed a Notice of Removal with the Clerk of the United States District
21
     Court for the Northern District of California, a true and correct copy of which is attached hereto
22
     as **Exhibit "1."**
23
     DATED: July __, 2008                     BUCHALTER NEMER
24                                            A Professional Corporation

25                                            By _____
26                                               Richard C. Darwin
                                                 Attorneys for Defendants BANK OF
27                                               AMERICA N.A. and LARRY
                                                 JOHNSTON
28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 2112095v1                              1

DEFENDANTS' NTC OF REMOVAL OF CIVIL ACTION
CASE NO. CGC-07-466120                              EXHIBIT B

**Exhibit D**

**Darwin, Richard C.**

---

**From:** Darwin, Richard C.
**Sent:** Friday, July 25, 2008 10:59 AM
**To:** 'sawyer@kerrwagstaffe.com'; 'James M. Wagstaffe'
**Cc:** Wright, James; Skaggs, Frances
**Subject:** Removal and Related Case Motion

Gentlemen:

On Thursday, July 24, 2008, Bank of America removed the action recently filed by your client in San Francisco Superior Court, *Micheletti v. Bank of America, N.A. and Larry Johnston*, to the United States District Court for the Northern District of California. A copy of the Notice of Removal was served on you by mail, so I imagine that you will receive it today. The case has been assigned to Magistrate Judge Bernie Zimmerman, and has been assigned the case number CV 08-3557 BZ.

Within the next day or two, we intend to file an administrative motion to consider whether the newly removed action should be related to Bank of America's Petition to Compel Arbitration, which is currently pending before Judge White (Case No. CV 08-2902 JSW), pursuant to Civil Local Rule 3-12. The purpose of this email is to seek a stipulation from you that the two cases are related under the criteria set forth in L.R. 3-12(a). As I'm sure you are aware, your stipulation that the two cases are related will not operate as any sort of concession regarding the merits of the cases or the jurisdiction of the federal court, and we will not attempt to make any such argument.

Given that the two cases quite clearly meet the criteria set forth in Local Rule 3-12(a), we hope that we can count on your stipulation in order to expedite the assignment of the newly removed case to Judge White. Please let me know whether you will so stipulate as soon as possible.

Best regards,

Rick Darwin

---

Richard Darwin | Shareholder | **BuchalterNemer**, A Professional Corporation | 333 Market Street, 25th Floor | San Francisco, CA 94105-2126 | Direct Dial: (415) 227-3555 | Cell Phone: (415) 205-2876 | Direct Fax: (415) 227-3537 | Switchboard: (415) 227-0900 | rdarwin@buchalter.com | www.buchalter.com

EXHIBIT D