**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BANK OF AMERICA, N.A.,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHELETTI FAMILY PARTNERSHIP, et al.<br><br>    Defendants.<br>_____/ | No. 08-02902 JSW<br><br>**ORDER DENYING MOTION TO DISMISS OR STAY AND GRANTING MOTION TO COMPEL ARBITRATION** |

**INTRODUCTION**

Now before the Court for consideration are the Motion to Dismiss or Stay Petition to Compel Arbitration filed by Defendants, the Micheletti Family Partnership, Arthur Micheletti, and Janice Micheletti (collectively "Micheletti"), and the Petition to Compel Arbitration filed by Plaintiff Bank of America, N.A. ("BofA"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds that the matter is suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b).) The hearing and initial case management conference set for October 17, 2008 are VACATED, and the Court HEREBY DENIES Michelletti's motion and GRANTS BofA's motion.

**BACKGROUND**

BofA's petition is premised upon an arbitration clause in a ground lease, dated July 18, 1977, which BofA, as tenant, entered into with "Bank of America National Trust and Savings Association, as Trustee of the Trust created by Arturo Micheletti by Substituted Declaration of

Trust dated March 13, 1931," as landlord (hereinafter the "1977 Lease"). (Petition, Ex. A (1977 Lease at 1).)

In 1931, defendant Art Michelleti's father, Arturo Micheletti, created the Arturo Micheletti Trust (the "Trust") and named BofA as Trustee. (*See* Declaration of Adrian J. Sawyer ("Sawyer Decl."), Ex. A (*Micheletti v. Bank of America, N.A.*, *et al.*, No. CGC-08-477590, Complaint (hereinafter "State Court Complaint") ¶ 11).) The Trust property consisted of real property in San Francisco and San Mateo counties, including the property that is the subject of the 1977 Lease. (State Court Complaint ¶¶ 12, 21.) According to Micheletti, the Trust "nominally terminated" in 1980, and the property that is the subject of the 1977 Lease was transferred to Micheletti. (*See id.* ¶¶ 13-18.) BofA alleges that the Lease is substantially similar to a lease that BofA and the Trust entered into in 1959 (the "1959 Lease"), which covered only a portion of the trust property at issue. BofA and the Trust sought and obtained court approval of the terms of the 1959 Lease but apparently did not do so for the 1977 Lease. (*See* State Court Complaint ¶ 32.)[1]

The 1977 Lease contains an arbitration provision that provides:

> Any question, dispute, controversy or misunderstanding arising under any provision of this lease shall be settled by arbitration. The party asking for arbitration shall request arbitration through the American Arbitration Association and the decision of that association shall be binding unto the parties hereto. The expense of the arbitration shall be borne as the American Arbitration Association directs.

(1977 Lease at 21.) It is undisputed that Micheletti did not sign the 1977 Lease. It also is undisputed that the parties have been operating under the terms of the lease, and Micheletti has been receiving rental payments under the 1977 Lease, since 1981, when the property was deeded to Micheletti.

At some point in 2007 disputes arose between Micheletti and BofA in connection with the termination of the 1977 Lease. The parties attempted to resolve their disputes informally

---

[1] BofA has filed a request for judicial notice in support of its motion to compel, in which it asks that the Court take judicial notice of Micheletti's state court complaint, pleadings relating to the court approval of the 1959 Lease, and the grant deed relating to the property at issue in this case. BofA's request is GRANTED. *See* Fed. R. Evid. 201(b), (d); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001).

2

but were unsuccessful. According to BofA, it demanded that Micheletti submit the disputes to arbitration, but Micheletti refused. (Petition ¶ 16; Declaration of James B. Wright ("Wright Decl."), ¶¶ 2-5, Ex. A.) On June 11, 2008, BofA filed its Petition to Compel Arbitration in this Court, but it has not filed a demand with AAA. In its Petition, BofA asserts that the dispute is governed by the FAA and asserts that diversity jurisdiction exists.

On July 16, 2008, Micheletti filed the state court action, in which he asserts claims against BofA and Larry P. Johnston, who signed the lease on behalf of BofA as Landlord, for breach of fiduciary duty, imposition of a constructive trust and accounting, waste, constructive fraud, negligence, and conversion. Each of the claims in the state court action is premised upon the allegation that BofA engaged in self dealing when it entered into the 1977 Lease. Micheletti, however, does not seek to rescind the 1977 Lease. (*See, e.g.,* State Court Complaint ¶¶ 23-31, 42-76 and Prayer for Relief.) Micheletti also alleges that he did not learn of the disputed lease terms until 2007, as the lease was about to terminate. (State Court Complaint ¶ 26).

On July 24, 2008, BofA removed the state court action to this Court, and the matter was related to the instant dispute. (*See Micheletti v. Bank of America*, *N.A.*, 08-3557-JSW, Docket Nos. 1, 6.) On September 5, 2008, the Court granted the parties' stipulation to remand the state court action to San Francisco Superior Court. (08-3557-JSW, Docket No. 9.) On September 12, 2008, BofA filed its motion to compel arbitration. On the same day, Micheletti filed the motion to dismiss.

## ANALYSIS

**A.    Micheletti's Motion to Dismiss or Stay Is Denied.**

Micheletti contends that the Court should dismiss or stay this action in favor of the state court action pursuant to the *Colorado River* doctrine or pursuant to its discretion under the Declaratory Relief Act. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). A district court has discretion under the doctrine of abstention to "decline to exercise or postpone the exercise of its jurisdiction." *Id.* at 813.

3

> The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Id.* (citing *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)).

Abstention rests on "considerations of proper constitutional adjudication and regard for federal-state relations." *Colorado River*, 424 U.S. at 817. Under the *Colorado River* doctrine, if federal and state courts have concurrent jurisdiction over a matter, the federal court may stay or dismiss its suit due to the presence of a concurrent state proceeding. *Id.* at 818. The Ninth Circuit requires a "substantial similarity" between the state and federal proceedings but has noted that "exact parallelism" is not required. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). The parties do address the substantial similarity requirement. The Court, however, concludes that the requisite similarity exists.

Courts weigh several factors when determining whether to stay or dismiss an action under *Colorado River*: (1) whether a court has assumed jurisdiction over a *res,* (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which jurisdiction was obtained by the concurrent forums, (5) whether state or federal law provides the rule of decision on the merits, and (6) whether the state proceeding is adequate to protect the parties' rights. *Id.* at 1415 (citing *Colorado* River, 424 U.S. at 818; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*. 460 U.S. 1, 25-26 (1983)). The Ninth Circuit also considers whether the federal court proceeding is an instance of forum shopping. *See, e.g., Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1367-68 (9th Cir. 1990). "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than a mechanical checklist." *Nakash*, 882 F.2d at 1415 (quotations omitted).

Dismissal under the *Colorado River* doctrine is warranted only under "exceptional" circumstances, and courts have uniformly acknowledged "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817-18 (citations omitted). However, as the Ninth Circuit has explained, "[t]his somewhat overstates the law because in certain circumstances, a federal court may stay its proceedings in deference

4

1 to pending state proceedings. This doctrine rests on considerations of wise judicial
2 administration, giving regard to conservation of judicial resources and comprehensive
3 disposition of litigation." *Nakash*, 882 F.2d at 1415 (quotations omitted).

4 Balancing the relevant factors, the Court concludes that Micheletti has not met his
5 burden to show abstention is warranted. Neither court has assumed jurisdiction over property,
6 so the first factor is neutral. Both the state court action and this action are pending in San
7 Francisco, and Micheletti does not argue that the federal forum is inconvenient. Thus, the
8 second factor either is neutral or, to the extent it is not neutral, weighs slightly against
9 abstention. *Cf. Puck v. WP Pacific, Inc.,* 2007 WL 2315952 at *4 (C.D. Cal. Jan. 17, 2007)
10 (where parties were located in Los Angeles, state court proceeding was pending in Los Angeles,
11 and federal court proceeding was pending in Orange County, factor was either neutral or
12 weighed slightly in favor of finding of inconvenience); *Hilb, Rogal & Hobbs Co. v. Driver*
13 *Alliant Ins. Servs., Inc.*, 2006 WL 2380667 at *5 (D. Ariz. Aug. 16, 2006) (determining second
14 factor was neutral where both state and federal court were located in Arizona).

15 Micheletti argues that the third factor, the desirability of avoiding piecemeal litigation,
16 factor weighs in favor of abstention, because both this Court and the state court would be
17 required to determine if his state claims fall within the scope of the arbitration clause. In light
18 of the Court's ruling on the motion to compel, the Court concludes the danger of piecemeal
19 litigation is not present and weighs against abstention.

20 The fourth factor looks to the order in which the state and federal courts obtained
21 jurisdiction. There is no dispute that BofA filed this suit before Micheletti filed the state court
22 action. Micheletti argues that when BofA filed its petition, there was no justiciable dispute
23 because BofA had not been aggrieved by a refusal to arbitrate. In its Petition, however, BofA
24 states that, notwithstanding its request, Micheletti refused to arbitrate the dispute. (Petition ¶
25 16; *see also* Wright Decl., ¶¶ 2-5, Ex. A.) Micheletti does not submit any evidence to contradict
26 this assertion. The Court, therefore, concludes that the Petition was ripe at the time it was filed.
27 In addition to looking to which suit was filed first, this factor also requires the Court to
28 determine which suit has progressed further. Here, resolution of BofA's petition will resolve

5

the federal proceedings. *See Moses H. Cone*, 460 U.S. at 22 (noting that although there had not been substantial progress in state proceedings, "[i]n the federal suit ... the parties had taken most of the steps necessary to a resolution of the arbitrability issue"). Although there has not been substantial progress in the state court action, that is due, in large part, to the fact that BofA removed the state court action shortly after it was filed. Thus, on the facts of this case, the Court concludes that this factor slightly weighs against abstention.

State law will provide the rule of decision on the underlying claims. In addition, this Court will apply state law, in part, in order to resolve the petition to compel arbitration. Thus, the fifth factor weighs slightly in favor of abstention. However, the Court concurs that on the facts of this case, the fact that state law governs does not rise to the level of exceptional circumstances. *See Travelers*, 914 F.2d at 1370 (concluding that where case involved "routine issues of state law-misrepresentation, breach of fiduciary duty, and breach of contract-which the district court is fully capable of deciding, there are no such 'rare circumstances'" warranting abstention under *Colorado River*).

With respect to the sixth factor, whether the state court would adequately protect BofA's rights, in *Travelers* the Ninth Circuit noted that this factor involves "the *state* court's adequacy to protect *federal* rights, not the federal court's adequacy to protect state rights." *Id.* (emphasis in original). Although BofA now contends that the FAA does not govern its petition to compel, the Court disagrees. The parties need not have "contemplated substantial interstate activity at the time they entered into the agreement." *Shepard v. Edward Mackay Enters.*, 148 Cal. App. 4th 1092, 1097 (2007) (citing *Allied Bruce Terminix Co., Inc. v. Dobson*, 513 U.S. 265, 277 (1995). Rather, all that is required is that the transaction turn out, in fact, to involve interstate commerce. *Allied Bruce Terminx*, 513 U.S. at 277. Here, it is undisputed that the 1977 Lease now involves citizens of different states. The Court concludes, therefore, that the 1977 Lease evidences a transaction involving interstate commerce. *See, e.g., Big Y Foods, Inc. v. Connecticut Properties Tri-Town Plaza, Inc.*, 985 F. Supp. 232, 234 (D. Conn. 1998) (dispute involving successors to a lease entered into in 1966 involved interstate commerce where

6

landlord and tenant were citizens of different states). The Court concludes that this factor weighs against abstention.

Finally, both parties accuse the other of forum shopping. Micheletti argues that BofA's Petition was a reactive measure and filed before any dispute existed. Because the Court has concluded that BofA was aggrieved by Micheletti's refusal to arbitrate when it filed the Petition, the Court does not find that argument persuasive.[2] The Court also accords little weight to BofA's argument that Micheletti is engaging in forum shopping within the state courts. Accordingly, the Court finds this factor to be neutral.

Balancing all of the factors, the Court concludes that Micheletti has not met his burden to show that exceptional circumstances required by *Colorado River* exist in this case. Accordingly, the Court denies the motion to dismiss or stay.[3]

**B.   BofA's Petition to Compel Arbitration is Granted.**

   **1.   Legal Standards.**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement. 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "Under § 4 of the FAA, a district court must issue an order compelling arbitration is the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue." *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002).

---

[2] It is, however, puzzled by BofA's decision to abandon its position that the FAA governs this dispute.

[3] Because the Court concludes that BofA's Petition properly was filed under the FAA, the Court does not reach Micheletti's alternative argument that the Court should exercise its discretion and decline jurisdiction under the Declartory Relief Act.

7

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). That the Court must order arbitration is true "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985).

Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion"). Thus, as with any contract, an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003.) Although the Court can initially determine whether a valid agreement exists, disputes over the meaning of specific terms are matters for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Prima Paint*, 388 U.S. at 403-404 (holding that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

While the Federal Arbitration Act contains the general presumption that arbitrability should be decided by the court, both state and federal cases hold that the issue may be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement that the parties intended that the question of arbitrability should be decided by the arbitrator. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944-45 (1995); *see also Dream Theater Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 550-57 (2004). Moreover, the cases hold that where the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules – such as the AAA Rules – that provide for the arbitrator to decide questions of arbitrability, the presumption that courts decide arbitrability falls away, and the issue is decided

8

by the arbitrator. *See, e.g., Poponin v. Virtual Pro, Inc.*, 2006 WL 2691418, *9 (N.D. Cal. Sept. 20, 2006); *Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700, *2-4 (N.D. Cal. May 4, 2005); *Dream Theater*, 124 Cal. App. 4th at 557.

**2.     Analysis.**

As a threshold matter, the Court must resolve the issue of whether the issue of arbitrability is one for the Court or for the arbitrator. Although it is undisputed that Micheletti did not sign the 1977 Lease, he does not dispute its existence or the existence of the arbitration clause contained therein. The language of the arbitration clause is clear and unambiguous. It provides that arbitration will be conducted by AAA. In 1977, AAA rules provided that "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association or under its rules. These rules *and any amendment thereof shall apply in the form obtaining at the time the arbitration is initiated*." (Declaration of Erin Welsh, Ex. 1 (emphasis added).) Current AAA rules provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (*Id.*, Ex. 2.) By explicitly stating that arbitration would be conducted by AAA, the parties thereby incorporated AAA rules, which provide that the arbitrator can determine his or her own jurisdiction.

The Court does not find Micheletti's argument that he could not have clearly and umistakably agreed to allow the arbitrator to decide arbitrability because he did not sign the lease to be particularly persuasive, given that he has benefitted, at least to some degree, from its terms over the past twenty years. Furthermore, Micheletti has not submitted a declaration that states that he was not aware of the arbitration provision and his state court complaint is not verified. Accordingly, the Court concludes that the parties did manifest a clear and unmistakable intent to submit the issue of arbitrability to the arbitrator. *See, e.g., Poponin*, 2006 WL 2691418 at *9 (where the arbitration agreement incorporated ICC Rules that provided for the arbitrator to decide arbitrability, the presumption that courts decide arbitrability falls away); *Anderson*, 2005 WL 1048700 at *24 (court conducts facial and limited review of the

1  contract to determine only whether the parties have in fact clearly and unmistakenly agreed to
2  commit the question of arbitrability to the arbitrator); *see also Dream Theater*, 124 Cal. App. 4th
3  at 553.

4  Accordingly, BofA's motion to compel arbitration is GRANTED.

## CONCLUSION

6  For the foregoing reasons, Micheletti's motion to dismiss or stay is DENIED, and
7  BofA's motion to compel arbitration is GRANTED. BofA asks the Court to stay the federal
8  proceedings. However, the Court's resolution of the motion to compel resolves the Petition to
9  Compel. Further, there is no federal action pending involving the disputes at issue. Thus, there
10 is nothing for the Court to stay. Rather, BofA has obtained all relief it sought in this Court, and
11 it is entitled to arbitrate its dispute with Micheletti. The Court notes, however, that nothing in
12 this Order should be construed as placing the burden to file a demand with the AAA on
13 Micheletti, and the Court expects BofA to file a demand forthwith.

14 A separate judgment shall issue, and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: October 14, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE